J-A16028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHALEEM HODGES | : | |
| | : | |
| Appellant | : | No. 2897 EDA 2016 |

Appeal from the Judgment of Sentence April 29, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009639-2014,
CP-51-CR-0009640-2014

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 21, 2018**

Khaleem Hodges appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury convicted him of two counts of aggravated assault,[1] one count each of possession of an instrument of crime (PIC),[2] carrying a firearm without a license,[3] and carrying a firearm in public in Philadelphia.[4]  Upon careful review, we affirm.

The trial court summarized the relevant facts as follows:

On June 16, 2014, Kione Gary told his mother's boyfriend, Michael Fornwald, that the bicycle Fornwald had bought for him had been stolen after Gary lent it to his friend Kashad Dublin.  Fornwald

---

[1] 18 Pa.C.S. § 2702(a)(1).

[2] 18 Pa.C.S. § 907(a).

[3] 18 Pa.C.S. § 6106.

[4] 18 Pa.C.S. § 6108.

took Gary to 22nd and Snyder [in Philadelphia] to pick up Dublin. Fornwald [then] drove the boys to 20th and Morris where they saw a young man that looked familiar to the boys. Fornwald parked the car at the northeast corner of the intersection and got out to speak to the young man who was standing at the southwest corner. [Hodges] was sitting on the northeast corner with three to four other people.

Fornwald then asked [Hodges] if he knew what happened to Gary's bicycle, and [Hodges] told him that his friend took it from Dublin because he (Dublin) owed his friend $20. Fornwald offered to pay the $20 in order to get the bicycle back. [Hodges] then told Fornwald that the bicycle was at Moore Street and he would go get it. Fornwald said he would meet [Hodges] there so he could put the bicycle in the car. Fornwald got into his car to move it and saw [Hodges] two to three feet in front of the car raise his arm holding a gun and fire three times at the car. Fornwald backed the car up and drove to Gary's mother's house. When they arrived, Fornwald realized Gary had been shot and told Gary's mother to call the police.

Detective John Logan was performing an unrelated investigation in the area when he drove up to 20th and Morris. He observed Fornwald backing his vehicle up and saw [Hodges] running along the sidewalk firing a gun at Fornwald's vehicle. Detective Logan followed [Hodges], who was walking with another male, and watched him enter a house at 2031 Mountain Street. Detective Logan radioed for backup and Sergeant [ ] Weber arrived first. As the backup officers were arriving, Detective Logan saw Anthony King exit the house and detained him with the assistance of other officers. Sergeant Weber ordered that a barricade be set up at the scene. Approximately thirty officers, including a S.W.A.T. team, arrived at the scene. Officer Thomas Gill entered the property as part of an entry team and recovered a revolver and a semi-automatic handgun from a golf bag found in the kitchen. There was no one in the property when the officers entered.

Meanwhile[,] Gary was taken to the hospital and Fornwald was taken to 24th and Wolf to give a statement [to police]. Detectives John Landis and Mike Ferry later took Fornwald to the intersection of Point Breeze and Mifflin Streets where officers had stopped King. Fornwald stated that King was not the person who shot at his vehicle. Fornwald returned to the police station the next day and spoke with Detective Robert Spadaccini. Detective Spadaccini showed Fornwald a photograph and asked if he recognized

anyone. Fornwald identified [Hodges] in the photograph as the person who shot at him. Detective Spadaccini then showed Fornwald a photo array, and Fornwald again identified [Hodges] as the person who shot at him.

Trial Court Opinion, 6/1/17, at 4-6 (internal citations omitted).

Detective Logan testified that he saw two men flee into a home at 2031 Mountain Street after one of them shot at the car containing the three complainants in this case. Detective Logan then observed King exit the same residence. When confronted by Detective Logan, King gave contradictory statements regarding a home invasion he claimed to have just experienced, and stated he had gun residue on his hands because the gunmen had left their guns in his residence, which he had hidden in a golf bag in his kitchen. King was detained and questioned, although ultimately he was released uncharged. Hodges claimed at trial he had been misidentified, and that King was the shooter. N.T. Trial, 2/22/16, at 168. King's statements were admitted at the first trial before the Honorable Angelo Foglietta, which ended in a mistrial, but excluded from the subsequent trial presided over by this lower court.

On April 2, 2015, the Commonwealth filed a motion *in limine* to admit Hodges' recorded prison calls and Twitter posts. On April 15, 2015, Hodges filed a motion to bar application of the mandatory minimum sentencing statute[5] and a motion *in limine* to exclude the prison tapes and Twitter posts, as well as to preclude any references, arguments, or evidence of innuendo

---

[5] Hodges argued the mandatory minimum sentence set forth in 42 Pa.C.S. § 9712 was unconstitutional under ***Alleyne v. United States***, 133 S. Ct. 2151 (2013).

- 3 -

alleging his gang involvement. Response to the Commonwealth's Motion *In Limine*, 4/15/15, at 1. The next day, Judge Foglietta granted the Commonwealth's motion in part, allowing the admission of the prison tapes and some of Hodges' Twitter posts. Additionally, Judge Foglietta granted Hodges' motion to bar the Commonwealth from applying the mandatory minimum sentencing statute. Judge Foglietta did not rule on Hodges' motion *in limine* to preclude any reference during the trial to Hodges' gang involvement.

On April 27, 2015, the court declared a mistrial after a jury was hung on the charges of aggravated assault, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and PIC. On April 29, 2015, Hodges filed a motion to bar retrial, which was denied. On May 11, 2015, Hodges filed an interlocutory appeal to this Court, but withdrew the appeal on November 24, 2015.

After Hodges' second trial, which spanned from February 17, 2016 to February 24, 2016, a jury found Hodges guilty of the above charges. On April 29, 2016, the trial court sentenced Hodges to an aggregate sentence of fifteen to thirty years' incarceration, with five years of consecutive probation. Hodges filed a motion to reconsider sentence on May 9, 2016, which was denied by operation of law on September 7, 2016. That day, Hodges filed a timely notice of appeal. Hodges then filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He presents the following issues for our review:

1. Did[] the lower court err in granting the [C]ommonwealth's motion to admit other act evidence, in violation of Pa.R.E. 404(b)?

2. Did[] the lower court err in preventing the defense from introducing at trial evidence concerning the out-of-court statements of Anthony King, insofar as the statements were not barred by the prohibition against hearsay, and barring their admission violated [] Hodges' right to present a defense?

3. Did[] the lower court err in allowing Police Officer York to testify at sentencing regarding [] Hodges' supposed acquaintances and unrelated activity by those individuals, and to use that testimony against [] Hodges in imposing sentence?

Appellant's Brief, at 4.

Hodges first challenges the admission of his Twitter posts at trial. The admissibility of evidence is a matter for the trial court's discretion, and a ruling will only be reversed for an abuse of discretion. **Commonwealth v. Antidormi**, 84 A.3d 736, 749 (Pa. Super. 2014). "For a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party," such that the trial court's error could have effected the verdict in the case. **Commonwealth v. Tyack**, 128 A.3d 254, 257 (Pa. Super. 2015).

Evidence of a person's character is inadmissible to "prove that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(a). However, an exception for character evidence allows its admission in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). **See Commonwealth v. Sherwood**, 982 A.2d 483, 497 (Pa.

2009).  The Supreme Court has held that "the trial court must decide first if the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect."  ***Commonwealth v. Serge***, 896 A.2d 1170, 1177 (Pa. 2006) (internal citations omitted).  Evidence of prior acts may also be introduced to prove consciousness of guilt.  ***Commonwealth v. Flamer***, 53 A.3d 82, 88 (Pa. Super. 2012), citing ***Commonwealth v. Pestinikas***, 617 A.2d 1339, 1348 (Pa. Super. 1992).

The evidence in question was elicited to demonstrate Hodges' knowledge of the crime.[6]  Hodges posted on Twitter the day of and in the two weeks following the commission of the crime.  Hodges claims that these Twitter posts amounted to "rhyming couplets or rap lyrics," and were not relevant.  Appellant's Brief, at 19.  We disagree.  As the first Twitter post relating to people being scared "around here," was posted within an hour of the shooting, Judge Foglietta admitted it as more probative than prejudicial, in order to prove Hodges' knowledge of the incident.[7]  N.T. Motions Hearing, 4/16/15, at 86-87.  ***See*** PA.R.E. 404(b)(2).  The two subsequent Twitter posts were from over a week after the shooting; however, the trial court determined these also served as more probative than prejudicial in determining the

---

[6] Specifically, the Twitter posts read: "Better be prepared around here, a lot of people scared around here[,]" "What's so special bout ya 38 to my glock 9," and "We beefing? Why tweet about it? We can have a shootout and let em read about it!"

[7] Judge Foglietta was asked to, but did not, file a supplemental opinion explaining his pre-trial ruling. Trial Court Opinion, 6/1/17, at 6.  His reasoning is in the record.  ***See*** N.T. Motions Hearing, 4/16/15, 86-87, 92, and 95.

absence of mistake, motive, and identity of Hodges as the shooter. N.T. Motions Hearing, 4/16/15, at 92, 95. *See* Pa.R.E. 404(b)(2). These posts were admitted to reference facets of the crime, such as scaring people in the neighborhood, the type of gun used, and shooting to settle disputes. Accordingly, we find it was not an abuse of discretion for the trial court to admit these Twitter posts. *Antidormi*, *supra*.

Hodges next argues that the trial court erred in declining to admit the out-of-court statements of Anthony King, which "violated [his] right to present a defense." Appellant's Brief, at 21. He also argues that King's statements were relevant, in that they demonstrated King's misstatements about his own knowledge of and involvement in the shooting, and that the statements had been admitted at the previous trial before Judge Foglietta.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. *See* Pa.R.E. 801(c). Hearsay is not admissible unless it falls under an exception provided by the rules of evidence. Pa.R.E. 802. The trial court concluded:

> Simply put, King's statements were hearsay. King's statements were made out of court to Detective Logan on June 15, 2014. The Commonwealth had no opportunity to cross-examine King about his statements. [Hodges] offered them to prove the substance of the statements—namely that King told Detective Logan where to find the firearms in his house and that he likely had gunshot residue on his hands from handling firearms.

Furthermore, although King was unavailable to testify at trial because he was deceased,[8] his statements were not admissible under any [Pa.R.E.] 804(b) exception. They were . . . not made when King was under belief of imminent death. [*See* Pa.R.E. 804(b)(2).] They were not genuinely against his penal interest. [*See* Pa.R.E. 804(b)(3).] Although King told Detective Logan that he may have gunpowder on his hands, King's statement was not against his penal interest relating to the actual shooting. Detective Logan knew that King was not the shooter because he had personally observed the shooting. Logan never arrested King, nor was he suspect of the crime. King's merely explaining why he may have had gunpowder on his hands did not expose him to criminal liability as the shooter. Hence, King's statements were not truly against his interest. Neither were they concerning his personal or family history. [*See* Pa.R.E. 804(b)(4).] Finally, they were not admissible against [Hodges] because he had wrongfully caused King to be unavailable (i.e., the forfeiture doctrine). [*See* Pa.R.E. 804(b)(6).] Therefore, King's statements were inadmissible hearsay and the court did not err when it allowed [Hodges] an opportunity to find an exception under which they could be admitted.

Trial Court Opinion, 6/1/17, at 8-9. We agree. Despite Hodges' argument to the contrary, the statements were offered for the truth, in that Hodges wanted the jury to believe King did have gun residue on his hands, and that he knew where the guns were located. Neither at trial nor on appeal did Hodges argue an exception that would render this hearsay admissible. Thus, the trial court did not err in refusing to admit King's statements to Detective Logan.

Lastly, Hodges argues the trial court erred in allowing a police officer to testify at sentencing regarding Hodges' involvement in gang activity in the surrounding neighborhood. Hodges claims that this evidence from Officer York was impermissible and tainted the court's sentence. Appellant's Brief, at 30-

_____

[8] Pa.R.E. 804(a)(4). King was also deceased at the first trial, but that was unknown to both parties at the time. N.T. 2/18/16, at 7.

31. It is well-established that "a proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials." *Commonwealth v. Medley*, 725 A.2d 1225, 1229 (Pa. Super. 1999). As such, a court may hear "any relevant information for the purposes of determining the proper penalty." *Id.* In crafting an individualized sentence, a trial court must balance factors such as "the nature and circumstances of the crime, the effect on the community, and the defendant's circumstances and needs." *Commonwealth v. Ali*, 149 A.3d 29, 38 (Pa. 2016); *see also* 42 Pa.C.S. § 9721.

As Hodges' neighborhood is known to be violent, and the perpetrators of the violence are largely members of the gang of which Hodges self-identified as a member, the testimony from Officer York served as background information for the trial court at sentencing. In this instance, the information about the nature of Hodges' neighborhood, and the gang activity there, served to inform the court's consideration of the effect of the sentence on the community. The trial court stated:

> York's testimony about area gang war shootings and homicides was not unfairly weighted against [Hodges]. The fact that [Hodges] shot multiple times at a vehicle that was occupied by three people, two of [whom] were children, was more dispositive. The fact that he shot a child was also seriously considered.

Trial Court Opinion, 6/1/17, at 14. Therefore, we find no abuse of discretion in the admission of the testimony of Officer York at sentencing. *Medley*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/18