1999 PA Super 20

**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Bobby Lewis MEDLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 31, 1998.
Filed Jan. 27, 1999.
Reargument Denied April 1, 1999.

Mark J. Merolla, Public Defender, Reading, for appellant.

Rebecca L. Bell, Assistant District Attorney, Reading, for Commonwealth, appellee.

Before POPOVICH, MONTEMURO *, JJ., and CIRILLO, President Judge Emeritus.

POPOVICH, J.:

¶ 1 This is an appeal from the judgment of sentence entered on February 24, 1998 by the Court of Common Pleas of Berks County following Appellant's conviction by jury of possession of a controlled substance,[1] possession with intent to deliver a controlled substance[2] and delivery of a controlled substance.[3] The charges stem from Appellant's purchase of drugs for an undercover police officer and delivery of the drugs to the officer. Appellant was sentenced to 24 to 48 months imprisonment after the court determined that his prior record score was five. This appeal followed.

¶ 2 Appellant raises two issues for our review:

I. WHETHER DEFENDANT ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT HIS DELIVERY OF COCAINE TO AN UNDERCOVER POLICE OFFICER OCCURRED IN RESPONSE TO AN ENTRAPMENT BY THE OFFICER, WHEN THE OFFICER INITIATED CONTACT WITH DEFENDANT BY KNOCKING ON THE CLOSED FRONT DOOR OF DEFENDANT'S RESIDENCE?[4]

II. WHETHER THE TRIAL COURT ERRED IN SENTENCING DEFENDANT BASED UPON A PRIOR RECORD SUPPORTED ONLY BY HEARSAY EVIDENCE OF CONVICTIONS FROM ANOTHER STATE, WHICH DEFENDANT DENIED?

(Appellant's Brief at 3). For the following reasons, we affirm.

¶ 3 Appellant first contends that the trial court erred in denying his motion for judgment of acquittal. The Commonwealth asserts, without citing the applicable rule or any case law, that Appellant waived this claim by failing to make the motion at the close of all the evidence. (Appellee's Brief at

---

* Retired Justice assigned to Superior Court.

1. 35 P.S. § 780–113(a)(16).

2. 35 P.S. § 780–113(a)(30).

3. 35 P.S. § 780–113(a)(30).

4. Appellant's claim is that the trial court erred in denying his motion for judgment of acquittal based on entrapment. The Commonwealth contends that this challenge has been waived since it was not specifically raised in Appellant's Pa. R.A.P. 1925(b) statement of matters complained of on appeal. Since Appellant did raise a sufficiency challenge in that statement, his present claim has, in fact, been preserved.

7). This assertion is incorrect since Pa. R.Crim.P. 1124 states:

(A) A defendant **may** challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged **in one or more of the following ways:**

(1) a motion for judgment of acquittal at the close of the Commonwealth's case-in-chief;

(2) a motion for judgment of acquittal at the close of all the evidence; ...

(4) a motion for judgment of acquittal made orally immediately after verdict; ....

(emphasis added). Appellant made two motions for judgment of acquittal – once at the close of the Commonwealth's case-in-chief and again after the jury announced its guilty verdict. (N.T. Trial, 12/10/97, at 53 and 114). Clearly, Appellant complied with Pa. R.Crim.P. 1124 by making the motion under subsections (A)(1) and (A)(4), thus preserving the issue for appeal.

 ¶ 4 Appellant's motions for judgment of acquittal based on entrapment were properly denied by the trial court. When the defense of entrapment has been raised, the trial court should determine the question as a matter of law **only** when there is no dispute as to the operative facts relating to the defense. *See Commonwealth v. Lucci*, 443 Pa.Super. 431, 662 A.2d 1, 3 (Pa.Super.1995) (emphasis added), *appeal denied*, 543 Pa. 710, 672 A.2d 305 (1995). "Whether entrapment has occurred is a question for the jury unless the evidence points to only one conclusion, thereby making it a question of law for the court." *Commonwealth v. Clark*, 453 Pa.Super. 257, 683 A.2d 901, 905 (1996), citing *Commonwealth v. Harris*, 431 Pa.Super. 222, 636 A.2d 210, 213 (1994).

¶ 5 The facts of this case are disputed. The police officer testified that on July 14,

1997, while working undercover with the Vice Department, he was directed to the 100 block of South Fourth Street. As the officer was parking his vehicle on that block, he initially saw Appellant standing on the landing of 136 South Fourth Street, but Appellant went through the doorway before the officer exited his vehicle. When the officer got to the landing, he saw Appellant in the vestibule area, and he called out Appellant's name. After asking the officer what he wanted, Appellant invited him inside and conversed with the officer while attempting to find his shoes. Appellant took two ten-dollar bills from the officer and, while the officer waited in his car, walked south on Fourth Street. A few minutes later, Appellant returned and gave the officer a bag containing what was later determined to be cocaine. The officer stated that "this whole incident from start to finish only lasted about five (5) minutes." (N.T. Trial, 12/10/97, at 37).

 ¶ 6 Appellant, however, claims that, as he was opening his front door, the officer walked in without being invited. Appellant admitted that he agreed to buy the officer drugs after the officer asked at least four (4) times, pleading with him for seven (7) to ten (10) minutes. Appellant contends that he never bought the drugs and returned the officer's money.[5]

 ¶ 7 Based on the contradictory testimony, the trial court refused to find entrapment as a matter of law and, instead, instructed the jury on the defense of entrapment[6] and the applicable burden of proof.[7] Appellant urges this Court to find entrapment as a matter of law based on our holding in *Commonwealth v. Lucci, supra.* In *Lucci*, this Court, recognizing that entrapment as a matter of law is fact-specific, held that:

---

**5.** "[A] defendant is not required to admit every element of the crime charged before he may contend that he was entrapped." *Harris*, 636 A.2d at 213, citing *Commonwealth v. McGuire*, 339 Pa.Super. 320, 488 A.2d 1144, 1151 (Pa.Super.1985).

**6.** "A public law enforcement official ... perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage

in conduct constituting such offense by ... employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it." 18 Pa.C.S.A. § 313(a)(2).

**7.** "[A] person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment." 18 Pa.C.S.A. § 313(b).

appellant was entrapped as a matter of law where: 1) a former very close friend; 2) appealing to the bonds of friendship and the sympathy engendered by the alleged impending death of his mother; 3) claiming that he, himself, had been through rehabilitation and was now "clean"; 4) approached appellant repeatedly about selling drugs in exchange for which appellant could have a "free high"; 5) all the while knowing that appellant was just out of rehabilitation and that his family was doing everything in its power to help him remain drug free.

*Id.* at 8. The egregious circumstances that were present in *Lucci, supra,* are not present here. The undercover officer was not a very close friend of Appellant's, nor was Appellant coaxed into obtaining drugs in exchange for a "free high". Thus, the trial court properly left the decision to the jury.

 ¶ 8 Appellant further contends that the trial court erred in sentencing him based upon a prior record score of five pursuant to 204 Pa.Code. § 303.1 *et seq.,* 42 Pa.C.S.A. § 9721. In *Commonwealth v. Archer,* 722 A.2d 203 (Pa.Super.1998), we stated, ". . . any misapplication of the Sentencing Guidelines constitutes a challenge to the discretionary aspects of sentence. A claim that the sentencing court misapplied the Guidelines presents a substantial question." *Archer,* 722 A.2d at 211, overruling *Commonwealth v. Johnson,* 421 Pa.Super. 433, 618 A.2d 415, 418–419 (1992) and *Commonwealth v. Palmer,* 700 A.2d 988, 995 (Pa.Super.1997). Thus, Appellant's claim that the lower court erred when calculating his prior record score presents a substantial question that the lower court abused its discretion at the time of sentencing. *Compare Archer, supra* (allegation that lower court miscalculated offense gravity score presents

a "legal question," not appealable as of right, but appealable because it raises a substantial question regarding the discretionary aspects of sentence).[8]

¶ 9 At the sentencing hearing, Appellant alleged that his prior record score should be two based upon his prior convictions in Berks County. (N.T. Sentencing, 2/24/98, at 7). The Commonwealth's position was that Appellant's prior record score should be five since he had numerous misdemeanor convictions in Greensboro, North Carolina. (*Id.* at 3). Appellant denied that all these convictions were attributable to him.[9] (*Id.* at 7). Since Appellant contested these convictions, the Commonwealth offered the testimony of Detective Yeich to support its position.[10] The trial court effectively summarized his testimony as follows:

> I called Greensboro, North Carolina Police Department. I spoke with Officer Williams. He found in their records fingerprints for Bobby Lewis Medley, same date of birth and same social security number as we have on file for Bobby Lewis Medley here. He obtained fingerprints, and he faxed copies to me. I got these copies. I went to the Reading Police Department so Sergeant Donald Matz, who is certified in fingerprint comparison —. I gave Sergeant Matz faxed copies of the fingerprints I obtained from Greensboro, North Carolina. He compared them to fingerprints obtained from Bobby Lewis Medley here. He determined they were obtained from the same person.

(Trial Ct. Op. at 5–6).

¶ 10 This was the only evidence provided by the Commonwealth with regard to appellant's prior convictions in North Carolina. No affidavit from the Greensboro police regarding the birthdate and social security

---

8. In order to challenge the discretionary aspects of sentence, Appellant must comply with the requirements set forth in *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987), and Pa.R.A.P. 2119(f), which require Appellant to set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence. Appellant has failed to comply with Pa.R.A.P. 2119(f). However, the Commonwealth has not objected. Therefore, we may address the merits of Appellant's attack upon the discretionary as-

pects of his sentence. *Commonwealth v. Saranchak,* 544 Pa. 158, 675 A.2d 268 (1996).

9. Although Appellant admitted to being incarcerated in North Carolina, he denied that he was convicted of all the offenses listed.

10. According to the assistant district attorney, Detective Yeich is "the detective for our office." (*Id.* at 4).

number on file for Bobby Lewis Medley in North Carolina was provided. Sergeant Matz, who did the actual fingerprint comparison, did not testify or prepare a report or an affidavit concerning his findings.

¶ 11 Appellant contends that it was error for the trial court to accept the Commonwealth's position that his prior record score was five since the only evidence presented was hearsay.[11] We disagree with Appellant that the admission into evidence and subsequent reliance upon hearsay testimony by the lower court at the time of sentencing was error. To the contrary, we find that the sentencing court properly considered Detective Yeich's testimony when determining Appellant's sentence.

¶ 12 "Precisely because of the wide latitude afforded sentencing courts and because we recognize the court's ability to arrive at a balanced judgment when possessed of all the facts, it becomes imperative that the facts relied upon by the sentencing court be **accurate**.... Thus, whenever the information contained in the pre-sentence report is challenged by the defendant at sentencing, it is incumbent upon the court to engage in a fact finding function to determine the truth or falsity of the statements contained in the report." *Commonwealth v. Kerstetter*, 398 Pa.Super. 202, 580 A.2d 1134, 1135–36 (Pa.Super.1990). When a defendant alleges that his prior record score is incorrect because he was not responsible for certain prior convictions listed in the pre-sentence report, the court should inquire into the circumstances surrounding the convictions. *Commonwealth v. Neary*, 355 Pa.Super. 92, 512 A.2d 1226, 1234 (1986), citing *Commonwealth v. Charles*, 339 Pa.Super. 284, 488 A.2d 1126 (1985); *see also Commonwealth v. Perkins*, 372 Pa.Super. 30, 538 A.2d 930, 932–933 (1988).

¶ 13 However, a proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials. *Commonwealth v. Orsino*, 197 Pa.Super. 306, 178

A.2d 843, 846 (Pa.Super.1962) (sentencing court has wide latitude in considering facts, regardless of whether such facts are produced by witnesses who the court sees and hears); *Commonwealth ex rel. Hendrickson v. Myers*, 393 Pa. 224, 229, 144 A.2d 367, 371 (1958) (same); *Commonwealth v. Petrillo*, 340 Pa. 33, 47, 16 A.2d 50, 58 (1940) (same). Rather, the court may receive any relevant information for the purposes of determining the proper penalty. *Commonwealth v. Maroney*, 201 Pa.Super. 493, 193 A.2d 640, 642 (1963), citing *Orsino, supra*.

¶ 14 "Although sentencing proceedings must comport with due process, the convicted defendant need not be accorded 'the entire panoply of criminal trial procedural rights.'" *Commonwealth v. Wright*, 508 Pa. 25, 36, 494 A.2d 354, 360 (1985), quoting *Gardner v. Florida*, 430 U.S. 349, 358 n. 9, 97 S.Ct. 1197, 1205 n. 9, 51 L.Ed.2d 393, 402 n. 9 (1977), *aff'd sub nom. McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In fact, "[t]he due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure." *Maroney*, 193 A.2d at 642, quoting *Williams v. New York*, 337 U.S. 241, 251, 69 S.Ct. 1079, 1085, 93 L.Ed. 1337, 1344 (1949) (as a matter of federal law, some hearsay concerning criminal conduct not resulting in conviction may be permitted in a sentencing hearing).

¶ 15 Presently, the lower court accepted Detective Yeich's testimony that he had contacted the Greensboro, North Carolina Police Department to obtain the criminal record and fingerprints for "Bobby Lewis Medley." Detective Yeich also testified that Sergeant Matz of the Reading Police Department confirmed that Appellant's fingerprints and those provided by the Greensboro Police Department were the same. Finally, despite his counsel's contention that the "Bobby Lewis Medley" who was arrested and convicted in Greensboro was not Appellant (N.T. Sentencing, 2/24/98, at 7), Appellant essentially acknowledged that he had been arrested in Greensboro, but asserted, "[b]ecause

---

11. "Hearsay" is evidence that contains an out-of-court statement offered to prove the truth of the matter asserted. *See, e.g., In re Child M.*, 452

Pa.Super. 230, 681 A.2d 793 (Pa.Super.1996), *appeal denied*, 546 Pa. 674, 686 A.2d 1307 (1996).

they got my fingerprint on file doesn't mean everything they got I did." (*Id.* at 9).

¶ 16 We are convinced that the lower court did not abuse its discretion when it based Appellant's sentence, in part, upon a prior record score of five. While Detective Yeich's testimony was hearsay, it was not the type of "unsubstantiated" hearsay previously criticized by this court in *Commonwealth v. Cruz*, 265 Pa.Super. 474, 402 A.2d 536, 537 (Pa.Super.1979), wherein the court based its sentence, in part, upon a detective's **unsubstantiated** statement that informants had told him that the defendant was a "weight dealer," i.e., a major drug dealer. Rather, the judge considered Detective Yeich's testimony in light of Appellant's admission that he was previously arrested and incarcerated in Greensboro and his personal knowledge of Sergeant Matz's previous professional work in fingerprint identification and related testimony.[12]

 ¶ 17 Bearing in mind that Appellant is not entitled to the same due process protections at the time of sentencing that he is at trial, we conclude that sufficient "indicia of reliability" existed with regard to Detective Yeich's hearsay testimony to permit the sentencing court to rely upon the same at the time of sentencing. *Compare Myers*, 193 A.2d at 642 (sentencing court did not abuse its discretion when it considered a hearsay statement by the assistant district attorney that the defendant refused to cooperate with the police and name his accomplices); *see also Cruz*, 402 A.2d at 538, quoting *United States v. Bass*, 175 U.S.App.D.C. 282, 535 F.2d 110 (1976) ("If a denial [by a defendant] were to be made, the ... court might request the Government to submit some verification ... [or] find existing factual support or indicia of reliability for the allegations....").

¶ 18 Moreover, this hearsay testimony is precisely the type of evidence which former Chief Justice Stern, in *Holmes' Appeal*, 379 Pa. 599, 607–608, 109 A.2d 523, 527 (1954), expressly stated "is the right of a court in sentencing to consider ... even though such information is obtained outside the courtroom from persons whom the defendant has not been permitted to confront or cross-examine." Significantly, the admission of hearsay in sentencing proceedings, especially those which do not involve a capital crime, is a common occurrence. In fact, sentencing courts, as a matter of course, consider hearsay in nearly every sentencing case since pre-sentence investigations are routinely ordered and considered by the court, and a pre-sentence report is the very definition of hearsay, i.e., the pre-sentence report is a report by a probation officer reciting other person's out-of-court statements offered for their truth. *See* Pa.R.Crim.P. 1403.

¶ 19 Accordingly, we affirm Appellant's judgment of sentence. *Cf., Neary*, 512 A.2d at 1233–1234 (trial court's inquiry into defendant's prior record was sufficient and sentence was properly imposed where defendant challenged three of his six prior convictions, and trial court conducted hearing at which probation officer testified regarding how the data in the appellant's FBI criminal record report was complied, testified that the information was accurate and that all six convictions were attributable to defendant).

¶ 20 Judgment of sentence affirmed.

¶ 21 MONTEMURO, J., files a Concurring and Dissenting Opinion.

MONTEMURO, J., concurring and dissenting:

¶ 1 While I agree with the majority as to the entrapment issue, I must dissent from its decision finding no error during sentencing.

¶ 2 The procedure to follow when a defendant contests his prior record score, according to 42 Pa.C.S.A. § 9714(c), is as follows:

> [t]he trial court, prior to imposing sentence, must have a **complete record of the previous convictions** and must furnish a copy of the record to the defendant. If the defendant contests the accuracy of the record, the court must schedule a hearing and

12. Appellant did not object when the court noted on-the-record that Sergeant Matz had previously testified before the court and had been found to be an expert in fingerprint comparison. (Sentencing Transcript, p. 5).

direct the defendant and the Commonwealth to submit evidence regarding the previous convictions of the defendant. Finally, the trial court must, based on the foregoing, determine by a preponderance of the evidence the previous convictions of the defendant.

*Commonwealth v. Perkins*, 372 Pa.Super. 30, 538 A.2d 930, 932 (Pa.Super.1988) (internal citations omitted) (emphasis added).

¶ 3 At the sentencing hearing, Appellant contested the accuracy of the record. Appellant denied that all of the North Carolina convictions were attributable to him; while Appellant admitted to being incarcerated in North Carolina, he denied that he was convicted of all the offenses listed on the presentence report.

¶ 4 The Commonwealth knew that Appellant was contesting his prior record score. Sentencing was postponed for this very reason. Instead of supporting their position with official documents that were available, the Commonwealth's sole evidence was the testimony of their detective, who testified he "gave Sergeant Matz faxed copies of the fingerprints [for Bobby Lewis Medley which were] obtained from Greensboro, North Carolina. He compared them to fingerprints obtained from Bobby Lewis Medley here [and] determined they were obtained from the same person." (Trial Ct. Op. at 5–6). This hearsay testimony regarding the matching of Appellant's fingerprints was the *only* evidence provided by the Commonwealth.

¶ 5 The majority stresses the relaxed standards of admissibility at sentencing hearings and the reliance on presentence reports, which are hearsay. Although the standards of admissibility at sentencing hearings are less restrictive than at trials, Appellant is contesting *prior convictions*, which can easily be proven through official documents. *See Commonwealth v. Lark*, 350 Pa.Super. 558, 504 A.2d 1291, 1297 (Pa.Super.1986) ("The proof of prior conviction is a simple historical fact which may be ascertained through official documents"). Fingerprint comparison would not even be necessary if an official document stating Appellant's convictions was provided.[13]

¶ 6 This Court is "fully cognizant of how difficult it often is to get information from sister jurisdictions." *Perkins*, 538 A.2d at 933 n. 2. However, when official documents are available, our system of justice should not allow hearsay testimony regarding the contents of such documents to suffice.

¶ 7 The majority states that when a defendant alleges that his prior record score is incorrect because he was not responsible for certain prior convictions listed in the presentence report, the court should inquire into the circumstances surrounding the conviction. To support this proposition, the majority relies upon three cases: *Commonwealth v. Neary*, 355 Pa.Super. 92, 512 A.2d 1226 (Pa.Super.1986), *appeal denied*, 515 Pa. 576, 527 A.2d 537 (1987); *Commonwealth v. Charles*, 339 Pa.Super. 284, 488 A.2d 1126 (1985); and *Perkins, supra*. Only *Neary* addresses a similar issue to that presented in this case.

¶ 8 In *Neary, supra*, the defendant claimed that the court erred in considering a report of criminal convictions compiled by the FBI. Unlike the case before us, the Commonwealth in *Neary* provided sufficient evidence to Sustain its burden of proving the defendant's convictions by a preponderance of evidence. *Neary*, 512 A.2d at 1234. Specifically, "the probation officer, after describing the method by which the data in the FBI report was compiled, testified that the information was accurate and that all convictions contained therein were attributable to appellant." *Id.*; *see also Commonwealth v. Whisnant*, 390 Pa.Super. 192, 568 A.2d 259, 260 (1990) (prior convictions established during sentencing proceeding through certified record from State of New Jersey); *Commonwealth v. Meo*, 362 Pa.Super. 328, 524 A.2d 902, 903, *appeal denied*, 516 Pa. 632, 533 A.2d 91 (1987) (prior record substantiated by Commonwealth through testimony of person who prepared report). No such corroboration was provided here.

---

13. Appellant was contesting the accuracy of the presentence report which listed his prior convictions. I fail to see how matching his fingerprints could suffice to prove that every single offense on the presentence report was committed by Appellant when he admitted to being incarcerated in North Carolina.

¶ 9 Moreover, in *Charles, supra,* this Court relied upon *Commonwealth v. Cowan,* 275 Pa.Super. 341, 418 A.2d 753 (Pa.Super.1980), where we

vacated a judgment of sentence and remanded for resentencing when the lower court had relied on information in a pre-sentence report that the defendant had argued was wrong. The Commonwealth had not brought forth any evidence showing that the report, listing a conviction for larceny, was accurate, after the defendant had protested that the information was wrong.

*Charles,* 488 A.2d at 1132. This Court held that "[i]f the allegations warrant it, the court should require the production of evidence by the Commonwealth showing the validity of the convictions." *Id.* This is not a case like *Charles* where an appellant was claiming that certain prior convictions were invalid due to the absence of assistance by counsel. *Id.* at 1131. Here, Appellant contends that he was not convicted of all the offenses listed on the pre-sentence report.

¶ 10 In *Perkins, supra,* this Court recognized that the

Supreme Court has declared that the trial court is to be furnished with a complete record of a defendant's prior convictions. While Pennsylvania courts have consistently rejected the notion that due process requires a higher standard of proof than a preponderance of the evidence in mandatory sentencing proceedings, we have stressed the importance of **proof through official documents.**

*Perkins,* 538 A.2d at 932 (internal citations omitted) (emphasis added). The Commonwealth could have easily produced this evidence in the form of an official document.

¶ 11 The majority contends that the court may receive any relevant information for the purposes of determining the proper penalty. This is true in cases such as *Commonwealth v. Maroney,* 201 Pa.Super. 493, 193 A.2d 640, 642 (Pa.Super.1963), where a hearsay statement made by the assistant district attorney that defendant would not cooperate with police was admissible at sentencing, and *Commonwealth v. Orsino,* 197 Pa.Super. 306, 178 A.2d 843, 846 (1962), where defendant's wife's testimony regarding abuse was admissible at a hearing for revocation of probation. But in

*Commonwealth v. Cruz,* 265 Pa.Super. 474, 402 A.2d 536, 537 (1979), an unsubstantiated statement that a defendant was a major drug dealer was found to be an inappropriate factor in a judge's imposition of sentence. *Cf. Gardner v. Florida,* 430 U.S. 349, 359, 97 S.Ct. 1197, 1205 n. 10, 51 L.Ed.2d 393 (1977) (noting concern "about the possibility that critical unverified information may be inaccurate and determinative in a particular case"); *see also Commonwealth v. Allen,* 340 Pa.Super. 189, 489 A.2d 906, 910 (1985) (although 12 prior arrests shown on presentence report, court only relied upon the 9 that defendant recalled).

¶ 12 Although the majority is correct that courts have wide latitude in considering certain facts at sentencing whether or not these facts are produced by witnesses whom members of the court see and hear, courts should consider official records when available, not hearsay testimony as to their contents. *See Commonwealth v. Petrillo,* 340 Pa. 33, 46, 16 A.2d 50, 58 (1940). Here, an accurate record of Appellant's prior convictions was available and should have been produced at sentencing in order to substantiate the validity of the North Carolina convictions.

¶ 13 Therefore, I would vacate the judgment of sentence and remand for resentencing.