J-S77007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
GERMEL PERKINS :
:
Appellant : No. 3272 EDA 2017

Appeal from the Judgment of Sentence April 30, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008441-2014

BEFORE: OTT, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY OTT, J.: **FILED FEBRUARY 12, 2019**

Germel Perkins appeals, *nunc pro tunc*, from the judgment of sentence imposed April 30, 2015, in the Philadelphia County Court of Common Pleas, after his post-sentence and appeal rights were reinstated pursuant to the Post Conviction Relief Act ("PCRA").[1] The trial court sentenced Perkins to an aggregate term of eight to 17 years' imprisonment, following his conviction, without a jury, of drug and gun charges. On appeal, Perkins challenges the sufficiency of the evidence and the discretionary aspects of his sentence. For the reasons below, we vacate the judgment of sentence and remand for resentencing. In all other respects, we affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

The facts underlying Perkins' arrest and conviction are as follows. Police officers, responding to a radio call of a person with a gun, observed Perkins banging on an apartment door with a hammer. When the officers ordered him to drop the hammer, he threw it to the ground and ran towards the next apartment. One officer observed him struggling with something in his waistband. As Perkins entered the apartment, the officer saw a "flash of a silver frame revolver with a black handle." Trial Court Opinion, 1/26/2018, at 4. Perkins eventually complied with the officers' order to exit the apartment with his hands up. The officers recovered a silver revolver on top of a bag just inside the doorway of the apartment, and 47 bags of crack cocaine on his person.

Perkins was charged with possession with intent to deliver controlled substances ("PWID"), possession of controlled substances, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and possession of an instrument of crime ("PIC").[2] The case proceeded to a non-jury trial, and on February 11, 2015, the trial court found Perkins guilty of all charges, except PIC.[3] On April 30, 2015, Perkins was sentenced to

---

[2] **See** 35 P.S. §§ 780-113(a)(30) and (a)(16), and 18 Pa.C.S. §§ 6106, 6108, and 907, respectively. When the officers learned the firearm had been stolen, Perkins was also charged with receiving stolen property (18 Pa.C.S. § 3925), at Docket No. 8442-2014.

[3] He was also convicted of receiving stolen property at Docket No. 8442-2014.

consecutive terms of three and one-half to seven years' incarceration for possessing a firearm without a license, two and one-half to five years' incarceration for PWID, and two to five years' incarceration for carrying a firearm on a public street in Philadelphia, for an aggregate sentence of eight to 17 years' imprisonment.[4] Thereafter, counsel filed both an untimely post-sentence motion, and an untimely notice of appeal. This Court quashed the untimely appeal on June 20, 2016. *See* 1651 EDA 2015.

On August 15, 2016, Perkins filed a *pro se* PCRA petition, seeking reinstatement of his post-sentence motion and appellate rights. Counsel was appointed, and filed an amended petition on April 11, 2017. On August 8, 2017, the PCRA court granted Perkins' requested relief. Thereafter, Perkins filed a post-sentence motion *nunc pro tunc*, which the trial court subsequently denied. This timely *nunc pro tunc* appeal followed.[5]

---

[4] On the offense of receiving stolen property at Docket No. 8442-2014, the trial court sentenced Perkins to a term of three years' probation to run consecutive to the sentence imposed herein.

[5] On October 12, 2017, the trial court ordered Perkins to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Perkins complied with the court's directive, and filed a concise statement on November 1, 2017.

We note the court also granted Perkins PCRA relief on Docket No. 8442-2014. An appeal in that case was docketed in this Court at 3273 EDA 2017. However, on November 27, 2018, this Court dismissed that appeal when Perkins failed to file a brief. *See* Docket No. 3273 EDA 2017.

In his first issue, Perkins challenges the sufficiency of the evidence supporting his convictions of the firearm offenses.[6]  Specifically, he asserts the Commonwealth failed to establish the barrel length of the handgun recovered from his apartment.  **See** Perkins' Brief at 29.

Our standard of review of a challenge to the sufficiency of the evidence is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Lopez**, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted), *appeal denied*, 62 A.3d 379 (Pa. 2013).

Under both Sections 6106 and 6108 of the Uniform Firearms Act, the Commonwealth must prove beyond a reasonable doubt that the defendant

---

[6] For ease of disposition, we address Perkins' claims in reverse order.

possessed a "firearm" under circumstances in which it was unlawful to do so. *See* 18 Pa.C.S. §§ 6106 (unlawful to carry a firearm without a license), 6108 (unlawful to carry firearm on public street or public property in Philadelphia without a license). Section 6102 defines a "firearm" as follows:

> "Firearm." Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S. § 6102.

Perkins insists the evidence was insufficient to convict him of the firearm offenses because the Commonwealth presented no evidence regarding the barrel length of the gun at issue. *See* Perkins' Brief at 30. Relying on ***Commonwealth v. Fitzhugh***, 520 A.2d 424, 430 (Pa. Super. 1987), *appeal denied*, 528 A.2d 955 (Pa. 1987), Perkins maintains "[b]arrel length is an essential element of the offenses defined in the Pennsylvania Uniform Firearms Act."

The firearm was described at trial as follows. Philadelphia Housing Officer Brooke[7] testified that after he ordered Perkins to drop the hammer, he observed Perkins moving his arm back and forth, "like he was trying to pull something out of his waistband." N.T., 2/11/2015, at 17. As Perkins turned to enter the apartment, the officer "saw the flash of a silver frame revolver

---

[7] Officer Brooke's first name is not identified in the trial transcript.

- 5 -

and a black handle coming out of [Perkins'] waistband right before he entered the doorway." *Id.* *See also id.* at 31 (officer describing how he saw a part of the silver frame and black handle of the gun, which Perkins had not pulled "all the way out" of his waistband yet). The officer then testified he recovered "[t]he silver revolver with the black handle … on top of a white bag, just inside the doorway" of the apartment. *Id.* at 22. Although the gun was not entered into evidence, the parties agreed to the following stipulation with regard to the receiving stolen property charge at Docket No. 8442-2014:

> [I]f Walter Donikowski were called to testify … he would testify that he is the owner of a Taurus model .357, serial number CS-18544, that he does not know Mr. Perkins, he never met Mr. Perkins, and that Mr. Perkins did not have his permission to have the firearm on the date in question.

*Id.* at 9.

Although we agree the Commonwealth did not establish the barrel length of the weapon recovered, we nevertheless find the evidence was sufficient for the trial court to determine beyond a reasonable doubt that the gun recovered was a "firearm" as described in Section 6102. *See Lopez*, *supra*, 57 A.3d at 79 ("The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.").

Section 6102 defines a firearm as a "pistol or revolver with a barrel length less than 15 inches" **or** "any revolver, rifle or shotgun with an **overall length of less than 26 inches**." 18 Pa.C.S. § 6102 (emphasis supplied). Officer Brooke described the gun as a "revolver," and the stipulation referred

- 6 -

to the weapon stolen from Mr. Donikownski as a "firearm," specifically, a "Taurus model .357." N.T., 2/11/2015, at 9, 17, 22. Significantly, as noted by the trial court,[8] Officer Brooke testified he observed Perkins pulling the gun from his waistband. *See id.* at 17 (officer describing that he saw the silver frame and black handle of a gun "coming out of [Perkins'] waistband"), 32 (explaining "[t]he whole gun was not out of his waistband yet" when Perkins entered the apartment). It would have been nearly impossible for Perkins to conceal a gun measuring more than two feet long (26 inches) in his waistband. Accordingly, we conclude the evidence was sufficient for the court to "reasonably conclude" that the gun recovered was "a firearm for purposes of the statute." Trial Court Opinion, 1/26/2018, at 11.

Next, Perkins challenges the discretionary aspects of his sentence. Such a claim is not appealable as of right, but "must be considered a petition for permission to appeal." *Commonwealth v. Best*, 120 A.3d 329, 348 (Pa. Super. 2015) (quotation omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved [the] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

---

[8] *See* Trial Court Opinion, 1/26/2018, at 10.

*Commonwealth v. Edwards*, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Perkins complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence, and subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). Therefore, we must determine whether he has raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Ventura*, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted). Here, Perkins contends the trial court improperly relied on (1) "second-hand accounts" of his alleged uncharged criminal conduct, (2) unsupported testimony of his "supposed violent reputation in the community[,]" and (3) the prosecutor's "quasi testimony linking [] Perkins to other nefarious individuals." Perkins' Brief at 22. A claim that the trial court relied on impermissible factors when imposing sentence raises a substantial question for our review. *Commonwealth v. Rhodes*, 990 A.2d 732, 745 (Pa. Super. 2009) (finding substantial question when defendant alleged the

sentencing court relied upon impermissible consideration, including unsubstantiated hearsay, uncharged crimes, and police reports not included in the certified record), *appeal denied*, 14 A.3d 827 (Pa. 2010). Finding Perkins has raised a substantial question, we proceed to a review of his claim on appeal.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." **Commonwealth v. Bullock**, 170 A.3d 1109, 1123 (Pa. Super. 2017) (citation omitted), *appeal denied*, 184 A.3d 944 (Pa. 2018). We note "[t]he sentencing guidelines are advisory, and when justified, a court acts well within its discretion to sentence outside the recommended ranges." **Commonwealth v. P.L.S.**, 894 A.2d 120, 128 (Pa. Super. 2006), *appeal denied sub nom*, **Commonwealth v. Schaffer**, 906 A.2d 542 (Pa. 2006).

In the present case, the trial court imposed a sentence at the top of the aggravated range of the guidelines for Perkins' Section 6105 conviction, and above the aggravated range for his PWID and Section 6108 convictions. **See** Perkins' Brief at 17-19.[9] When a court imposes a sentence outside of the guidelines range, it must provide contemporaneous reasons on the record for its deviation. **See** 42 Pa.C.S. § 9721(b). Further, an appellate court must

_____

[9] Although the sentencing guideline forms are not included in the certified record, the Commonwealth does not dispute Perkins' guideline calculations.

vacate a sentence imposed outside the guidelines if it finds the sentence is "unreasonable." 42 Pa.C.S. § 9781(c)(3).

Here, Perkins contends that in imposing a sentence above the aggravated range of the guidelines, the trial court relied on impermissible factors, specifically, "second-hand accounts" of his alleged "uncharged criminal conduct," as well as his purported "violent reputation in the community," and the prosecutor's "quasi testimony linking [] Perkins to other nefarious individuals." Perkins' Brief at 22.

As Perkins asserts, unsubstantiated allegations concerning a defendant's other crimes are not permitted during a sentencing hearing. In *Commonwealth v. Cruz*, 402 A.2d 536 (Pa. Super. 1979), a detective testified the defendant, who had been convicted of selling two packets of heroin on two occasions, was "known to be what we would call a weight dealer. He has been known to deal in large quantities other than just dime bags and so on." *Id.* at 537. When the court inquired how the detective learned that information, the detective replied, "[i]nformants and through undercover agents also working." *Id.* Although a panel of this Court ultimately found the issue waived because counsel never objected to the statement, the panel opined: "An [u]nsubstantiated statement that a defendant is a major drug dealer would be an inappropriate factor in a judge's imposition of sentence." *Id.* at 536.

In **Commonwealth v. Karash**, 452 A.2d 528 (Pa. Super. 1982), this Court vacated a judgment of sentence when the trial court acknowledged that in imposing the sentence, it had relied upon television and newspaper accounts that the defendant escaped from prison while awaiting sentencing. **See id.** at 529 (finding the trial court "denied appellant's right to the presumption of innocence, and, in sentencing him as though he had been proved guilty of escape, his right to due process.").

Similarly, in **Rhodes**, **supra**, this Court vacated a sentence when the trial court relied upon "police reports it obtained *ex parte*" from which it drew "factual inferences" to support its imposition of a sentence five times that recommended by the Commonwealth. **Rhodes**, **supra**, 990 A.2d at 745. In that case, the defendant, an 18-year old college student, entered an open guilty plea to voluntary manslaughter after the death of her newborn daughter. **See id.** at 734. At the plea hearing, the prosecutor informed the court that while there was no agreement as to sentencing, the Commonwealth would have no objection to a downward departure from the guidelines, and stated his belief the crime fit the profile for neonatacide. **Id.** at 736. The trial court, however, rejected that characterization, based in large part on its review of police reports it obtained from the Commonwealth *ex parte*, and presented an "alternate recitation of the case, drawing unfavorable inferences against the defendant[.]" **Id.** at 740. The court imposed a sentence that fell only two years' below the statutory maximum. **See id.** at 741. In concluding

the trial court erred when it relied on the *ex parte* police reports, the panel stated: "Regrettably, the trial court's reliance on the undisclosed and unchallenged hearsay of the police reports allowed it to reach the tendentious characterization of [the defendant's] conduct on which it based its rejection of the FBI neonaticide profile and the Commonwealth's sentence recommendation." *Id.* at 747.

Nevertheless, a panel of this Court has found that under certain circumstances, a trial court may consider "unprosecuted criminal conduct" when determining an appropriate sentence, such as when a defendant's prior record score does not adequately reflect his criminal background. *P.L.S.*, *supra*, 894 A.2d at 131. However, there must be an "evidentiary link between the defendant and the uncharged prior conduct." *Id.*

In *P.L.S.*, the trial court considered testimony by a Sexual Offenders Assessment Board ("SOAB") investigator that the defendant, who had been convicted of sexually abusing his girlfriend's minor daughter, admitted to another investigator, who did not testify, that he abused two other minor victims. *See id.* at 128. The investigator also claimed that when he confronted the defendant with this prior admission, the defendant did not deny he made the statement. *See id.*

On appeal, the panel determined the trial court was permitted to consider this prior, uncharged criminal conduct at sentencing. *See id.* at 132. The panel noted the information was contained in the defendant's SOAB

assessment, a document the court was permitted to rely upon at sentencing.

*See id.* Moreover, the panel explained:

> [T]he evidence linking Appellant to these other crimes stood unrefuted. That evidence sprang from Appellant's own mouth and was confirmed by the victims. Under [the relevant case law,] the sentencing court was permitted to rely upon Appellant's admissions when it imposed sentence.
>
> In addition, we note that this sentence was increased beyond the guidelines not merely because Appellant could not be prosecuted for his abuse of the two other children. The sentencing court clearly found, based upon Appellant's abuse of those victims, that he was a threat to children and needed to be sentenced above the guidelines ranges for the protection of the public.
>
> Finally, even if we were to conclude that the uncharged conduct should not have been considered by the sentencing court, the court offered significant other support for sentencing in excess of the guidelines in this case. Appellant sexually abused his victim nearly weekly for two years. As the sentencing court noted, the effect of this ongoing sexual abuse was substantial and long-term. The court also was appalled that Appellant would abuse a child in retaliation against the child's mother and attempt to justify his actions on that basis. …

*Id.* at 132-133 (some citations omitted). *See also Commonwealth v. Vernille*, 418 A.2d 713, 719 (Pa. Super. 1980) (finding no impropriety when trial court considered defendant's "alleged involvement in other unlawful activities for which he was not charged, tried or convicted" when imposing sentence; the information was included in the presentence investigation report ("PSI"), "developed at trial," and the defendant "admitted most of the facts"); *Commonwealth v. Medley*, 725 A.2d 1225, 1228-1229 (Pa. Super. 1999) (finding court properly relied upon hearsay testimony at sentencing regarding defendant's prior convictions in North Carolina; Pennsylvania officer identified

North Carolina officer who verified defendant's date of birth and social security number, and then faxed a copy of North Carolina defendant's fingerprints to Pennsylvania sergeant certified in fingerprint comparison), *appeal denied*, 749 A.2d 468 (Pa. 2000).

Here, Perkins contends the trial court's reliance on the following testimony was improper. First, Officer Anthony Soliman testified he had been assigned to the 22nd District for the last nine years and spent a significant amount of time investigating drug and gang organizations in the Blumberg Housing Project where Perkins was arrested. N.T., 4/30/2015, at 8. The officer stated Perkins was associated with the "Waterboys" drug organization through "narcotic sales and in multiple robberies by gun." *Id.* at 10. Officer Soliman claimed he learned of Perkins' involvement "through numerous investigations, debriefing of other individuals, victims who are less than encouraged to come forth." *Id.* He specifically testified: "The individuals, I have personally spoken to are definitely afraid of Mr. Perkins. And the violence has followed him." *Id.* at 11. He elaborated that other drug dealers in the project cease operations when Perkins is in the building for fear of being robbed by him. *See id.* The officer explained that of all the people he has spoken to in the building, "[o]ne person[']s name that continuously re-appears is Mr. Perkins as being violent; as somebody who – yeah – they sell drugs but moreso they are more interested and more fearful of his robberies." *Id.* at 12. Under cross-examination, Officer Soliman conceded he was "not in a

position to offer … documentation" regarding his investigations, and many of the people he has spoken to are not willing to testify. *Id.* at 13-14.

Second, Officer David Cikanovich testified he has also been assigned to the Blumberg Housing Project for the last two years, and Perkins is "known for" committing "gunpoint robberies" in elevators so he would not be seen. *Id.* at 20-21. Moreover, Officer Cikanovich testified he heard Perkins had threatened other housing officers. *See id.*

Third, the prosecutor offered three photographs into evidence, which purportedly depicted Perkins with other members of the "Waterboys" gang. After identifying the men in the photos, the prosecutor stated:

> Your Honor has heard, and I can offer, I have handled all of these cases. I can testify to them. I was there.

*Id.* at 17. He then proceeded to list the crimes the men had been convicted of and explained: "I'm not alleging Mr. Perkins is a 'kingpin' in this organization. Those photos indicate a connection with this organization[.]" *Id.* at 19.

Perkins argues the second-hand accounts of his purported other criminal acts "is clearly inappropriate based on *Cruz*, *supra*." Perkins' Brief at 25. Further, he maintains the prosecutor's "testimony" was also improper because he was not sworn or subject to cross-examination; rather the prosecutor "simply accused Mr. Perkins of associating with nefarious individuals and then vouched for the credibility of those allegations." *Id.* at 27. While he acknowledges that "hearsay – to some extent – is admissible at sentencing[,]"

Perkins insists the "the scenarios where hearsay is admissible bear no resemblance to [his] sentencing hearing." **Id.** We are constrained to agree.[10]

The unsubstantiated allegations concerning Perkins' reputation as a violent individual who commits gunpoint robberies and sells narcotics are indistinguishable from the allegation that the defendant was a "weight dealer" in **Cruz**, **supra**, or the damaging information the trial court obtained from *ex parte* police reports in **Rhodes**, **supra**. In both **Cruz** and the case *sub judice*, the officers acquired their information from unnamed sources, who were either unable or unwilling to testify. Here, however, unlike in **Cruz**, Perkins' counsel objected to this hearsay testimony, thereby preserving the issue for appeal. **See** N.T., 4/30/2015, at 10, 15-16, Moreover, as in **Rhodes**, Perkins was

_____

[10] We note Perkins has not challenged the testimony provided by two other officers at the sentencing hearing. Specifically, Officer Raymond Brook stated he was in the courtyard of the Blumberg Projects on the morning before Perkins' arrest when he witnessed an argument between Perkins and his girlfriend. **See** N.T., 4/30/2015, at 24. At one point, the girlfriend stated, "don't make me tell the police what you do." In response, Perkins "pulled out a wad of cash …[a]nd he said they already know what I do" as he counted the money in front of the officers. **Id.** Because Officer Brook was a witness to this encounter, any objection would have been meritless.

Perkins also did not challenge the sentencing testimony presented by Detective Michael Rocks, who detailed his investigation of a shooting in September of 2014, in which the victim identified Perkins as his assailant. **See id.** at 28. Although the detective arrested Perkins for the crime, the case was eventually dismissed because the victim could not be located. **See id.** at 29-30. Here, too, because Detective Rocks had firsthand knowledge of the investigation, this testimony was permissible.

unable to cross-examine any person who had firsthand knowledge of his purported participation in other violent and illicit activities.

Further, the cases in which we have permitted this type of hearsay testimony at sentencing are distinguishable. In **P.L.S.**, the allegations of uncharged abuse were documented in the official SOAB assessment, and, significantly, not denied by the defendant. **See P.L.S.**, **supra**, 894 A.2d at 128. Similarly, in **Vernille**, the defendant's involvement in uncharged criminal activity was documented in his PSI, "developed at trial," and he "admitted most of the facts." **Vernille**, **supra**, 418 A.2d at 719. Here, Perkins did not admit any of the violent behavior of which he was accused, nor did he acknowledge his mere presence instilled fear in the Blumberg Projects residents. Moreover, it does not appear that any of the allegations were documented, or reviewed by the pre-sentence investigator.[11] Accordingly, we agree with Perkins that the testimony concerning his alleged participation in gunpoint robberies and other violent behavior should not have been considered by the trial court at the sentencing hearing.[12]

_____

[11] We note the PSI is not in the certified record. However, neither the trial court nor the Commonwealth indicates these allegations were included in the PSI.

[12] However, we find no merit to Perkins' other allegations of impropriety. Although Officer Cikanovich's claim that he heard Perkins had threatened other police officers was clearly hearsay, Perkins never objected to that testimony during the sentencing hearing, nor did he include that particular claim in his motion seeking reconsideration of his sentence. Therefore, his present objection is waived. **See Edwards**, **supra**. Moreover, Perkins' claim

However, we are required to vacate the sentence only if we conclude the court relied upon impermissible factors when imposing his sentence.

> "In deciding whether a trial judge considered only permissible factors in sentencing a defendant, an appellate court must, of necessity, review all of the judge's comments. Moreover, in making this determination it is not necessary that an appellate court be convinced that the trial judge in fact relied upon an erroneous consideration; it is sufficient to render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon such a factor."

*Commonwealth v. Scott*, 860 A.2d 1029, 1030 (Pa. Super. 2004), *appeal denied*, 889 A.2d 1215 (Pa. 2005).

The court provided the following rationale for its sentence at the conclusion of the hearing:

> I've considered the modified presentencing report and the guidelines in this case, the arguments of both counsel, the defendant's allocution and certainly all of the testimony that's been offered today.
>
> I make several summary findings in no particular order. **I find that the evidence of the defendant's reputation, on the whole, is reliable based on the testimony of the Blumberg law enforcement officers who stated the basis of that knowledge or opinion for what it's worth.**
>
> I also find that the evidence of the defendant's prior deeds – the ones that the officers actually witnessed – which would boil down to his, quote, unquote: they know what I do.

---

that the prosecutor offered "quasi testimony" is also unfounded. While the prosecutor did list several crimes Perkins' alleged associates had been convicted of, that information could have been easily verified, and, in any event, was not relied upon by the trial court.

I find that reliable testimony. And I accept that as direct evidence. I find that the circumstances of the defendant's arrest are troubling in this case.

**The facts involved in that culpable conduct does place him in a different place than your garden variety PWID for a culpable defendant, same goes for his culpable conduct insofar as the VUFA offense.**

**I do find the defendant poses a great danger to the community. I find that the sentencing guidelines, in this case, are under-representative of his history of criminality and his propensity to commit violent crimes.**

N.T., 4/30/2015, at 40-41. (emphasis supplied).

Upon our review of the court's comments at sentencing, it appears the trial court did rely upon the officers' testimony regarding Perkins' reputation as a violent drug dealer and robber when imposing sentences within and above the aggravated range of the guidelines. This fact becomes clear, however, upon review of the trial court's opinion:

Here, the Court carefully considered the record before it, the pre-sentence reports, [Perkins'] allocution and the guidelines. The Court also considered the circumstances of instant offenses demonstrated that not only was [Perkins] dealing crack cocaine, but he was protecting his drug business with a firearm. **The court also considered the evidence adduced by the Commonwealth established to the Court's satisfaction that [Perkins] was a drug dealer, a robber, a member of a large criminal gang, and that he was terrorizing his neighbors in the Blumberg Public Housing Project.**

In light of these factors, the Court concluded that [Perkins] posed a great danger to the community. The Court also found that the guidelines under-represented [Perkins'] criminal conduct and his propensity to commit violent crime.

Trial Court Opinion, 1/26/2018, at 12. Although we recognize there may be other bases in the present case for imposing a sentence outside of the

guidelines range, we are constrained to agree with Perkins that it "reasonably appears from the record that the trial court relied in whole or in part upon [an impermissible] factor." **Scott**, supra, 860 A.2d at 1030.

In summary, we find the officer's testimony at the sentencing hearing, that described Perkins' prior criminal behavior of which the officers had firsthand knowledge, was permissible. Nevertheless, because we conclude the trial court relied upon other impermissible factors in imposing Perkins' sentence within and above the aggravated range of the guidelines, we vacate the judgment of sentence and remand for re-sentencing. In all other respects, we affirm.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/19