J-S33011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARK S. RIGGLEMAN | : | |
| | : | |
| Appellant | : | No. 754 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 1, 2021,
in the Court of Common Pleas of Northampton County,
Criminal Division at No(s):  CP-48-CR-0000509-2019.

BEFORE:  KUNSELMAN, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED DECEMBER 28, 2022**

Mark S. Riggleman appeals from the judgment of sentence imposed after he was found guilty of several offenses.  Upon review, we affirm.

The trial court summarized the underlying facts of this case as follows:

[O]n December 16, 2018, [] [Riggleman] and his girlfriend, Amy Maurer ("Victim"), returned to her home in the City of Bethlehem after a night together at a Christmas party and a local bar. During a fight about [Riggleman's]s behavior around other women, Victim demanded [Riggleman] leave her home where he had been residing. The argument became physical, and [Riggleman] pinned Victim to the ground, struck her multiple times in the head, and choked her. The majority of the assault was recorded on [Riggleman's] cellphone. Due to the attack, Victim suffered a ruptured left ear drum, a fractured left metacarpal on her hand that required surgery, and multiple contusions to her face, neck, arms, and legs.

Trial Court Opinion, 2/24/22, at 2.  Riggleman was arrested and charged.

Following trial, a jury convicted Riggleman of aggravated assault (attempt to cause serious bodily injury) and simple assault.[1] Additionally, the trial court found him guilty of harassment.[2]

At the sentencing hearing, the Commonwealth read a letter from the victim into the record explaining the nature of her relationship with Riggleman and the impact the attack had on her. Several of Riggleman's friends and his mother spoke about Riggleman's character and role in the community. Riggleman personally addressed the trial court, during which he wanted to read certain emails and texts sent to him by the victim. The Commonwealth objected asserting they were hearsay. The court sustained the objection.

Afterwards, the trial court sentenced Riggleman to 84 to 180 months' incarceration for aggravated assault; simple assault merged with the aggravated assault for purposes of sentencing. The court imposed no further penalty for harassment. Riggleman filed a post-sentence motion, which, in part, challenged the court's refusal to allow Riggleman to read the communications into the record at sentencing. After a review of these communications, the court denied Riggleman's motion.

Riggleman filed this timely appeal. He raises the following two issues for our consideration:

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1) and 2718(a)(1). Riggleman was acquitted of strangulation and aggravated assault (caused serious bodily injury).

[2] 18 Pa.C.S.A. § 2709(a)(1).

A. Did the trial court err in ruling that hearsay evidence is not admissible during a sentencing proceeding thereby excluding [Riggleman] from presenting relevant evidence in mitigation of sentence?

B Did the trial court violate Rule 704(C)(1) of the Pennsylvania Rules of Criminal Procedure in denying [Riggleman] the right to incorporate hearsay evidence of a mitigating nature during [Riggleman's] opportunity to make a statement on his own behalf at the time of sentencing thereby impairing his ability to fully articulate matters of mitigation, explanation and context?

Riggleman's Brief at 4.

In his first issue, Riggleman claims that the trial court erred when it denied his request to present various communications sent to him by the victim on the basis of hearsay during his allocution. Specifically, he argues that hearsay evidence is permitted to be introduced at a sentencing proceeding. Riggleman maintains that, if the Commonwealth can introduce a pre-sentence investigation report ("PSI") and a victim impact statement, both of which are hearsay, he should have been allowed to read the emails and texts from the victim. Instead, he claims the court precluded him from referring to the communications and their significance; using them to define the nature of his relationship with the victim, contradict the victim's description of their relationship, or explain what precipitated the incident. According to Riggleman, the court's refusal to allow these communications into evidence, was error and prevented him from providing evidence in mitigation of his sentence. Riggleman's Brief at 10-11.

Initially, we observe that the admission of evidence presented at a sentencing hearing is vested within the sound discretion of the trial court

applying the rules of evidence. *Commonwealth v. Hairston*, 84 A.3d 657, 674 (Pa. 2014). As such, our standard of review of a trial court's evidentiary rulings is abuse of discretion. *Commonwealth v. Walter*, 93 A.3d 442, 449 (Pa. 2014). Thus, we will not disturb an evidentiary ruling unless "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence of record." *Commonwealth v. Cooper*, 941 A.2d 655, 667 (Pa. 2007) (citation omitted). This includes rulings on the admission of hearsay.

Hearsay is a statement that the declarant does not make while testifying at the current trial or hearing that is offered into evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c)(1)-(2). Statements that meet this definition are not admissible unless a hearsay exception applies or is permitted by other rules prescribed by the Pennsylvania Supreme Court or by statute. Pa.R.E. 802. "The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement." *Commonwealth v. Chmiel*, 889 A.2d 501, 532 (Pa. 2005) (citation omitted); *see also Commonwealth v. Smith*, 681 A.2d 1288, 1290 (Pa. 1996) ("a hearsay statement lacks guarantees of trustworthiness").

Here, the Commonwealth summarized the substance of the communications which Riggleman sought to introduce at his sentencing hearing as follows:

In the email dated September 18, 2018, almost three months before the attack, the victim indicated that she "hates her job" and was "not well." The text message dated November 8, 2018, more than a month before the attack, contained statements from the victim about how she was not happy living here and had "issues." The victim further indicated that she had been thinking about dying a lot lately and referred to [Riggleman] as a "good guy." In the text message dated February 20, 2017, almost two years before the attack, the victim thanked [Riggleman] for making her "want to be better" and indicated that she hoped she could be such an influence on someone's life one day.

Commonwealth's Brief at 5-6. The victim's statements in the emails and texts are clearly hearsay. The communications were out of court statements offered to prove the truth of the matter asserted. As such, these communications were not admissible. Riggleman contends, however, that hearsay is admissible at sentencing hearings.

For the purposes of sentencing a defendant, a trial court may admit evidence as to any matter that it deems relevant and admissible on the question of the sentence to be imposed, and the evidence shall include matters relating to any of the aggravating or mitigating circumstances. *Commonwealth v. Young*, 637 A.2d 1313, 1321-22 (Pa. 1993). Notably, "a proceeding held to determine [a] sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials." *Commonwealth v. Medley*, 725 A.2d 1225, 1229 (Pa. Super. 1999). Consequently, the admission of hearsay in sentencing proceedings, especially those which do not involve a capital crime, is a common occurrence. *See Commonwealth v. King,* 182 A.3d 449, 455 (Pa. Super. 2018); *Medley,* 725 A.2d at 1229.

> Hearsay testimony is precisely the type of evidence which is the right of a court in sentencing to consider even though such information is obtained outside the courtroom from persons whom the defendant has not been permitted to confront or cross-examine. Significantly, the admission of hearsay in sentencing proceedings, especially those which do not involve a capital crime, is a common occurrence. In fact, sentencing courts as a matter of course, consider hearsay in nearly every sentencing case since pre-sentence investigations are routinely ordered and considered by the court and a pre-sentence report is the very definition of hearsay, *i.e.*, the report is a report by a probation officer reciting other person's out-of-court statements offered for their truth.

*Medley*, 725 A.2d at 1230. Notably, the Victim's Bill of Rights, the Sentencing Code, and the Pennsylvania Rules of Criminal Procedure all permit a trial court to consider a PSI and victim impact statement prior to imposing a sentence, which include statements of hearsay. *See* 18 P.S. § 11.201(5); 42 Pa.C.S.A. §§ 9721(b) and 9731: Pa.R.Crim.P. 702(A).

But, the consideration of hearsay, even at a sentencing hearing, is not unfettered. *See* Pa.R.E. 101 cmt. Instead, a sentencing court may rely on hearsay evidence in the limited circumstance where the hearsay originated from a dependable source under reliable circumstances. *Medley*, 725 A.2d at 1225. For example, in *Medley*, the Commonwealth established the defendant's prior record based on a detective's testimony that he had contacted out of state authorities to verify a prior conviction. Also, the defendant admitted he had a prior conviction. Although the detective's testimony constituted hearsay, it had sufficient indicia of reliability under the circumstances to be relied upon by the sentencing court. *Id.* at 1230. Such circumstances do not exist here.

First, the communications were cherry picked by Riggleman himself to advance his own interest. Additionally, they are merely portions of conversations without any broader context or evidence of the circumstances under which they were made. Further, they represent only several moments in time during the course of this relationship and were not even made in close proximity to the time of the incident. Finally, these statements were not relevant to the sentencing of Riggleman. Thus, we discern no abuse of the court's discretion in prohibiting Riggleman from reading the victim's statements.

In his second issue, Riggleman claims that the trial court's erroneous ruling regarding the emails and texts resulted in a denial of his right of allocution. Consequently, Riggleman contends that his sentence should be vacated. Riggleman's Brief at 15-16.

Initially, as discussed above, the trial court did not err in refusing to allow Riggleman to read the victim's communications to him. Furthermore, while our rules of criminal procedure guarantee the right of allocution to all who stand convicted of crimes, and the failure to grant this important right undoubtedly constitutes legal error, our review of the record indicates that the trial court afforded Riggleman this right. *See* Pa.R.Crim.P. 704(C)(1); 42 Pa.C.S.A. § 9752(a)(2). Although the court did not allow Riggleman to read the emails and texts verbatim into the record, the court permitted him to tell the court about them and their contents during his allocution. Riggleman explained:

I wanted to be able to read the email and things just because I feel fairness and justice for two parties to be able to say things and not just one.... I have lots of communications from [Victim] leading up to this night via email and text that, you know, she's saying how wonderful I am, how much she loved me, how fortunate she is. She's saying she doesn't know what she would do without me. There's also times where she says she's broken and that she needs help or that she doesn't want to live.

. . . Not to put her down as a person, but just indicated some of the things that are being said that aren't true. She was planning on moving for months. I have emails to verify that. She hated her job. I have email she says that and verifies that. She – she - she was unhappy here and she wanted to move, and she got to move and I'm happy for her.

N.T., 10/1/2021, at 55-56. Contrary to Riggleman's claim, the court gave him ample opportunity to address the court and make a statement on his behalf before the court sentenced him including a description of his relationship with the victim, her mental state, and plans to relocate prior to the attack. The trial court committed no error with respect to Riggleman's allocation.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2022

- 8 -