J-S22042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN SAMUEL STOUDT | : | |
| | : | |
| Appellant | : | No. 36 MDA 2020 |

Appeal from the Judgment of Sentence Entered April 10, 2019
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001865-2017

BEFORE:   OLSON, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JULY 10, 2020**

Appellant, John Samuel Stoudt, appeals from the aggregate judgment of sentence of eight to twenty years of confinement, which was imposed after his jury trial convictions for eight counts each of:  arson placing another person in danger of death or bodily injury, arson with the purpose of destroying or damaging an inhabited building or occupied structure, and recklessly endangering another person; one count of arson recklessly placing an inhabited building or occupied structure of another in danger of damage or destruction; and three counts of criminal mischief damaging tangible property

---

[*] Retired Senior Judge assigned to the Superior Court.

of another intentionally, recklessly, or by negligence.[1]  With this appeal, appellate counsel has filed a petition to withdraw and an ***Anders***[2] brief, stating that the appeal is wholly frivolous.  After careful review, we affirm Appellant's conviction, but, as we perceive meritorious issues concerning Appellant's sentencing, we deny counsel's petition to withdraw, vacate Appellant's judgment of sentence, and remand for re-sentencing.

On June 22, 2017, at about 1:00 a.m., the Buck Motel ("the Buck") in Jonestown, Pennsylvania, was intentionally set on fire.  Trial Court Opinion, dated October 23, 2019, at 2-3, 16.  "Multiple residents lived in efficiencies and apartments on the property."  ***Id.*** at 2.  After the fire, "the owners of the building, Gerald and Patricia Krause, were unable to reopen the [Buck.]"  Trial Court Opinion, dated December 3, 2019, at 2.

On October 19, 2018, prior to trial, a victim advocate filed a one-page "Application for Restitution" on behalf of a non-testifying former resident of the Buck, Roger Zipp, requesting $110.00 for "moving expenses" and a second one-page "Application for Restitution" on behalf of Barry Schaffer,[3] requesting $900.00 for a "security deposit" and "personal items (clothing, TV,

---

[1] 18 Pa.C.S. §§ 3301(a)(1)(i), (ii), 2705, 3301(c)(2), and 3304(a)(1), respectively.

[2] ***Anders v. California***, 386 U.S. 738 (1967).

[3] This resident's last name was spelled "Schaffer" on the "Application for Restitution" and "Schaeffer" in the notes of testimony when the trial court awarded him restitution at sentencing. N.T. Sentencing at 20.

furniture)[.]" No supporting documentation was attached to either application. On December 13, 2018, the victim advocate filed similar one-page "Application[s] for Restitution" on behalf of the Krauses requesting $1,000.00 for "insurance deductible" and on behalf of Tuscarora Wayne Insurance requesting $88,607.02 for "payout f/damages @ Buck Hotel[.]" Nothing was attached to the Krauses' application; a print-out of an e-mail to the victim advocate from an associate attorney from a private law firm stating that "[p]ayment should be issued in the amount of $88,607.02" was attached to the insurance company's application, without any authentication of the e-mail nor even clarification as to whom the attorney represented.

At Appellant's jury trial, Lori Hitz, a resident of the Buck at the time of the fire, testified that, while she was living at the Buck, Room "4 had a guy named Eric living in it. . . . I believe 6 had a guy named Roger Zipp. . . . 9 was a guy named Barry, I'm not sure his last name." N.T. Trial[4] at 8. She then testified that she "was displaced from her room at the Buck" and "lost some of her belongings due to the fire." Trial Court Opinion, dated October 23, 2019, at 3 (citing N.T. Trial at 13). Hitz did not testify as to the cost of the items that she lost in the fire. *See* N.T. Trial at 10-15.

_____

[4] The notes of testimony for the one-day trial are divided into two books, each beginning with a page numbered "1". The first book includes the trial court's opening instructions to the jury and counsel's opening statements. The second book contains the remainder of the trial, including all of the witness testimony. Since we only cite from the second book in this decision, "N.T. Trial" herein solely refers to this second book.

- 3 -

Pamela Blouch testified that, on the night of June 21 into June 22, 2017, she was working at the Perseverance Fire Company Club ("the Perse") as a bartender. Trial Court Opinion, dated October 23, 2019, at 4 (citing N.T. Trial at 21).

> Blouch testified that she knew [Appellant] through her work at the Perse. [She estimated that t]he time to drive between the Perse and the Buck was "[p]robably about 2 minutes." N.T. [Trial at] 22. Blouch stated that [Appellant] was at the Perse on June 21, 2017 going into the early morning hours of the 22nd. [*Id.* at] 23. Blouch testified that last call at the Perse on that date was 1[:00 A.M.] and that [Appellant] left the Perse between 1[:00] and 1:30 [A.M. *Id.* at] 23.

*Id.*

When asked if she had insurance to cover her losses, Ms. Krause testified that "they issued the check" for "about $89,607[.]" N.T. Trial at 34.

> [Mr. Krause testified that the Buck] had a video surveillance system with sixteen (16) cameras. Approximately three (3) weeks prior to the fire, the camera in the hallway had a wire torn. [Mr. Krause] had purchased new equipment three (3) days before the fire but had not yet replaced the damaged unit. N.T. [Trial at] 49-50. [Mr. Krause] also had video cameras on the outside of the building. He noted that the end wires were pulled, disconnecting the outside cameras. [*Id.* at] 50. . . . [Mr. Krause] identified an individual seen on [a] Channel 12 clip as [Appellant, who] was a "semiregular" patron of the bar. [*Id.* at] 54-55. Video surveillance clips from Channel 14-1 and 14-2 showed the vestibule and the door and [Appellant] walking toward the area of the parking lot. Channel 15 part 2 showed the parking lot area where [Appellant] was parked. Clip 14-2 showed [Appellant] standing in the doorway of the area where the camera wires were located. [*Id.* at] 55-57. Video from channel 13 showed the "person[" -- *i.e.*, Appellant – "]standing at the back door of the bar....they go up them steps...that's where the camera is showing down the hallway of all the [tenant] rooms." [*Id.* at] 58. . . .
>
> [Pennsylvania State Police Trooper John Burns testified that t]he "goldish or tannish" Jeep Liberty found at [Appellant]'s house at

the time of his arrest matched the vehicle seen in the video footage. [*Id.* at] 88.

Trial Court Opinion, dated October 23, 2019, at 8-9, 12 (unnecessary capitalization omitted) (some additional formatting).  On January 29, 2019, Appellant was convicted of the aforementioned charges.

Prior to sentencing, on April 9, 2019, the victim advocate filed another "Application for Restitution" requesting that "CVC" be reimbursed $81.25 for "claim f/Lori Hitz" and $1,000.00 for "claim f/Eric Gallegos[,]" for a total of $1,081.25.  Attached to the application were two letters from the Victims Compensation Assistance Program:  one dated February 9, 2018, and stating that it had "approved an award" of $81.25 to the Good Samaritan Hospital of Lebanon PA"; and the other dated August 1, 2018, stating that it had "approved an award" of $1,000.00 to Gallegos.  On April 9, 2019, the victim advocate also filed a revised "Application for Restitution" on behalf of Roger Zipp, now requesting $400.00 for "rent" in addition to the $110.00 previously requested for moving expenses, for a total of $510.00; a handwritten receipt for $400.00 for "1 week rent" signed by "Deb" and dated March 20, 2019, was attached thereto.

At Appellant's sentencing hearing on April 10, 2019, Mr. Krause gave a victim impact statement, which included the following:

> Not only did [the Buck's permanent residents] lose their home, some of them lost their personal possessions like clothing, photos, keepsakes. . . . [Appellant] caused some to miss work, loose [*sic*] income.  Some even ended up losing their jobs while trying to start over and get back on their own feet, find other places to live,

not to mention having to replace all that was lost. . . . A couple [of the Buck's employees] lost their freedom by going to jail because they could not pay their child support or other debts that they had. . . . Kevin, our DJ for 10 years, almost lost his business and could have lost his home. He was on the brink due to his equipment being damaged and not being able to recoup all his losses.

N.T. Sentencing at 7-8. The Commonwealth presented no testimony about restitution, and the parties did not stipulate to restitution amounts. *See id.* at 1-14.

Before sentencing Appellant, the trial court stated, "I will . . . consider that this [crime] is not indicative of your character. You have no prior criminal record. You worked. You raised a family. This is an aberration." *Id.* at 15. The trial court sentenced Appellant to the above-mentioned aggregate judgment of sentence of eight to twenty years of confinement and ordered the following restitution:

Tuscarora Wayne Insurance Company in the amount of $88,607.02;

Crime Victim's Compensation Fund in the amount of $1,081.25;

Roger Zipp in the amount of $510.00;

Barry Schaeffer in the amount of $900.00;

Patricia and Gerald Krause in the amount of $1,000.00.

*Id.* at 20.

On April 12, 2019, Appellant filed a timely post-sentence motion challenging the sufficiency and weight of the evidence and the discretionary aspects of sentencing; Appellant's arguments concerning sufficiency and weight were identical. Post Sentence Motion, 4/17/2019, at ¶¶ 6.b.-c., 7.b.-

c.  The motion was denied in part on October 23, 2019, by order and accompanying opinion; the next day, Appellant filed a motion for reconsideration, in which he noted that the trial court did not address the motion to modify sentence.  On November 1, 2019, the trial court entered an order in which it stated that "the court shall issue a decision in regard to the attached post-sentence motion to modify sentence to supplement the decision and order issued on October 23, 2019.  [Appellant's] appeal deadline is extended until 30 days after we have adjudicated the motion to modify sentence."  Order, 11/1/2019 (unnecessary capitalization omitted).  The trial court entered an order and opinion on December 3, 2019, denying the remaining post-sentence motion.  On December 30, 2019, Appellant filed his notice of appeal and statement of errors complained of on appeal.

A notice of appeal must "be filed within 30 days after the entry of the order from which the appeal is taken."  Pa.R.A.P. 903(a).

> If the defendant files a timely post-sentence motion, the notice of appeal shall be filed:
>
> > (a) within 30 days of the entry of the order deciding the motion; [or]
> >
> > (b) within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion; . . .
>
> [T]he judge shall decide the post-sentence motion, including any supplemental motion, within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, or to grant an extension . . . , the motion shall be deemed denied by operation of law. . . .

> When a post-sentence motion is denied by operation of law, the clerk of courts shall forthwith enter an order on behalf of the court, and . . . forthwith shall serve a copy of the order on the attorney for the Commonwealth, the defendant's attorney, or the defendant if unrepresented, that the post-sentence motion is deemed denied. This order is not subject to reconsideration.

Pa.R.Crim.P. 720(A)(2)(a)-(b), (B)(3)(a), (c).

In the current action, the 120-day period for decision on Appellant's post-sentence motion expired on August 12, 2019.[5] However, the clerk of courts failed to enter an order deeming the motion denied on that date. Instead, the trial court ruled on the motion on October 23, 2019, and December 3, 2019, and both dates were outside the 120-day period, and Appellant appealed within 30 days of the December 3, 2019 order. Ordinarily, the appeal would be untimely. Nevertheless, this Court has held that a court breakdown occurs when the trial court clerk fails to enter an order deeming post-sentence motions denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(c), and a breakdown in the processes of the court grants this Court jurisdiction over an untimely appeal. *See Commonwealth v. Flowers*, 149 A.3d 867, 872 (Pa. Super. 2016) (breakdown in court operation granted this Court jurisdiction over untimely appeal); *Commonwealth v. Patterson*, 940 A.2d 493, 498 (Pa. Super. 2007) (recognizing this Court's power to grant relief in the case of a breakdown in the processes of the court); *Commonwealth*

---

[5] One hundred twenty days after April 12, 2019, was Saturday, August 10, 2019. The next business day thereafter was Monday, August 12, 2019. *See* 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation.").

***v. Perry***, 820 A.2d 734 (Pa. Super. 2003) (holding clerk of court's failure to follow the criminal rules constitutes a breakdown in the court process). Accordingly, we decline to quash the appeal.

On March 10, 2020, appellate counsel filed an ***Anders*** brief, in which he challenges the sufficiency of the evidence, the weight of the evidence, and the discretionary aspects of sentencing. ***Anders*** Brief at 8, 11-12.[6] On March 9, 2020, appellate counsel sent a letter to Appellant, informing him that counsel intended to file a petition for leave to withdraw. The next day, counsel filed his petition to withdraw. Appellant has not filed a *pro se* response to that petition.

> When presented with an ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw. Pursuant to ***Anders***, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he/she must do the following:
>
>> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous;
>>
>> (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and
>>
>> (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se*, or raise any additional points he deems worthy of this Court's attention.

_____

[6] The "Statement of Questions Presented" merely states: "Does an examination of the record provide any basis for any arguments supporting reversal or modification of the order in question?" ***Anders*** Brief at 4.

In **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Once counsel has satisfied the **Anders** requirements, it is then this Court's responsibility to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated.

**Commonwealth v. Cox**, 2020 PA Super 102, *3-*4 (filed April 22, 2020) (internal quotation marks and some internal citations omitted) (some additional formatting).

In this appeal, we observe that appellate counsel's March 9, 2020, correspondence to Appellant provided a copy of the **Anders** brief to Appellant and advised Appellant of his right either to retain new counsel or to proceed *pro se* on appeal to raise any points he deems worthy of the court's attention. Further, appellate counsel's **Anders** brief, at 4-8, complies with prevailing law in that counsel has provided a procedural and factual summary of the case with references to the record. Despite broadly stating that he believes that there is nothing in the record that arguably supports any of Appellant's claims,

- 10 -

*id.* at 8, appellate counsel still refers to some facts of record that arguably support Appellant's challenge to the sufficiency of the evidence. *Id.* at 8-9. Ultimately, appellate counsel cites his reasons and "conclusion that the appeal is frivolous[.]" *Id.* at 16. Counsel's *Anders* brief and procedures hence comply with the requirements of *Santiago* and *Cox*. We therefore proceed to conduct an independent review to ascertain whether the appeal is indeed wholly frivolous.

The first issue raised in the *Anders* brief is the sufficiency of the evidence. *Id.* at 8. Appellant does not challenge that the fire at the Buck was the result of arson or that it placed people in danger. *Id.* His sole dispute is whether the evidence was sufficient to establish that he was the arsonist. *Id.* at 8-9.

> This Court's standard for reviewing sufficiency of the evidence claims is as follows:
>
>> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>>
>> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter

- 11 -

of law, no probability of fact can be drawn from the combined circumstances.

> *Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa.Super. 2012)).

*Commonwealth v. Izurieta*, 171 A.3d 803, 806 (Pa. Super. 2017) (internal brackets omitted).

As the trial court noted, "[a]t trial, the Commonwealth presented powerful circumstantial evidence that [Appellant] ignited the Buck fire." Trial Court Opinion, dated October 23, 2019, at 17. This evidence included testimony by Blouch that Appellant "left the [Perse] shortly before the fire occurred" and that "[t]he club was located minutes away from the Buck." *Id.*; *see also id.* at 4 (citing N.T. Trial at 21-23). Additionally, "[c]opious footage from [the Buck's surveillance] cameras was shown to the jury[,]" *id.* at 17, and Appellant was the only individual seen on these recordings around the time that the fire began and at the time some of the cameras had been disconnected. *Id.* at 8-9 (citing N.T. Trial at 49-50, 55-57). Mr. Krause recognized Appellant as a "semiregular" customer of the motel. *Id.* at 8 (citing N.T. Trial at 54-55). Viewing all of this evidence and all of the reasonable inferences drawn therefrom in a light most favorable to the Commonwealth as verdict winner, the Commonwealth established beyond a reasonable doubt that Appellant was the only possible perpetrator. *Izurieta*, 171 A.3d at 806.

The next question raised in the **_Anders_** brief is whether the verdict was against the weight of the evidence. **_Anders_** Brief at 11.

> When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion. A reversal of a verdict is not necessary unless it is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. The fact-finder also has the responsibility of resolving contradictory testimony and questions of credibility. We give great deference to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

**_Commonwealth v. Roane_**, 204 A.3d 998, 1001 (Pa. Super. 2019) (internal citations and quotation marks omitted). The **_Anders_** brief does not challenge the credibility of any of the Commonwealth's witnesses nor specify any inconsistencies in any of the Commonwealth's evidence. **_See Anders_** Brief at 11-12. In any event, such concerns would have been the prerogative of the jury, as fact-finder, to resolve. **_Roane_**, 204 A.3d at 1001. Accordingly, Appellant's challenge to the weight of the evidence fails, and, consequently, we affirm Appellant's conviction.

The **_Anders_** brief also challenges the discretionary aspects of Appellant's sentence. **_Anders_** Brief at 12.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e [normally] conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **_see_** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **_see_** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the

sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Manivannan*, 186 A.3d 472, 489 (Pa. Super. 2018) (quotation marks and some citations omitted), *reargument denied* (July 7, 2018).  In the current case, Appellant filed a notice of appeal that we have deemed to be timely and preserved his issue in a post-sentence motion. Although the *Anders* brief does not include a statement pursuant to Pa.R.A.P. 2119(f),

> [w]here counsel files an *Anders* brief, this Court has reviewed the matter even absent a separate Pa.R.A.P. 2119(f) statement. *See Commonwealth v. Wilson*, 396 Pa.Super. 296, 578 A.2d 523 (1990); *see also Commonwealth v. Lilley*, 978 A.2d 995 (Pa.Super.2009).  Hence, we do not consider counsel's failure to submit a Rule 2119(f) statement as precluding review of whether Appellant's issue is frivolous.

*Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015). Nonetheless, we must still "determine[] that there is a substantial question that the sentence was not appropriate under the sentencing code." *Id.*

The *Anders* brief contends that Appellant's sentence is inconsistent with "(1) the protection of the public; (2) the gravity of the offense as it relates to the impact on the life of the victim and the community; and, (3) the rehabilitative needs of the [Appellant,]" *Anders* Brief at 12, consequently mirroring the language of Section 9721(b).  42 Pa.C.S. § 9721(b) (requiring the sentencing court to "follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim

and on the community, and the rehabilitative needs of the defendant"). Appellant's argument therefore raises a substantial question. ***See Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1266 (Pa. Super. 2014) (*en banc*) ("[a]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question" (citation omitted)). Hence, we will consider the substantive merits of his sentencing claim. ***Anders*** Brief at 12.

> Our standard of review is as follows:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Lekka***, 210 A.3d 343, 350 (Pa. Super. 2019) (citation omitted).

Preliminarily, we observe that the trial court did consider the protection of the public and Appellant's rehabilitative needs and found both those factors in Appellant's favor. As referenced above, during sentencing, the trial court asserted that Appellant's actions on the night in question were an "aberration" and "not indicative of [his] character" and recognized that Appellant had no prior criminal history, had a work record, and raised a family. N.T. Sentencing at 15. In its opinion, the trial court further conceded that Appellant "was a good person for the overwhelming majority of his life" and again

- 15 -

acknowledged that the arson at issue is not "indicative of his character because he has no prior criminal record, worked and raised a family." Trial Court Opinion, dated December 3, 2019, at 1, 10. *Ergo*, when the trial court sentenced Appellant, it agreed that Appellant was not a threat to the public and did not require rehabilitation.[7]

Hence, we turn to the final factor, the gravity of the offense as it relates to the impact on the life of the victim and the community. During the sentencing hearing, Mr. Krause testified that some of the Buck's former residents missed work and lost income and that some even lost their jobs. N.T. Sentencing at 7. He also testified that "[a] couple" of the Buck's former employees lost their freedom, because they were unable to pay their child support or other debts. *Id.* He continued that one of the Buck's vendors nearly lost his business and could have lost his home due to his equipment being damaged and not being able to recoup his losses. *Id.* at 8. However, all of these statements are hearsay – they were offered to prove the truth of the matters asserted, even though there was no evidence during trial or at the sentencing hearing from any of the Buck's former residents about missing work and no testimony at trial or sentencing from the Buck's former employees or vendors. *See Commonwealth v. Chmiel*, 889 A.2d 501, 532

---

[7] The *Anders* brief did not indicate what rehabilitative measures Appellant believes the trial court should have imposed, instead merely complaining that "the experience of prison for those eight years" will not "put him back on the right track[.]" *See Anders* Brief at 14-15.

(Pa. 2005) (Hearsay "is an out-of-court statement offered to prove the truth of the matter asserted in the statement. The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement." (citation omitted)).

The Rules of Evidence apply to sentencing proceedings. Pa.R.E. 101(a) ("These rules of evidence govern **proceedings in all courts** of the Commonwealth of Pennsylvania's unified judicial system, except as otherwise provided by law." (emphasis added)). Albeit that the comment to Pa.R.E. 101 concedes, "[t]raditionally, our courts have not applied the law of evidence in its full rigor in proceedings such as . . . sentencing hearings," this comment does not endorse a wholesale abrogation of the hearsay rule in the sentencing context. A sentencing court is permitted to rely upon hearsay evidence in the limited circumstance where the hearsay originated from a dependable source under reliable circumstances. For example, in *Commonwealth v. Medley*, 725 A.2d 1225, 1228 (Pa. Super. 1999), the issue concerned the defendant's prior record score, and the Commonwealth established through hearsay proof that an out-of-state conviction increased that score. While the defendant objected to the sentencing court's reliance upon hearsay, this Court rejected that contention due to the trustworthy nature of the proof. Specifically, a police detective testified that he had contacted the out-of-state authorities and verified that the defendant was convicted of the offense based upon the defendant's name and fingerprint identification. *Id.* at 1230. This Court

- 17 -

outlined that, while the police witness's "testimony was hearsay, it was not the type of 'unsubstantiated' hearsay previously criticized by this court . . . ." *Id.* In affirming, this Court also observed that the defendant had admitted that he previously was arrested in the city and state in which the offense occurred and that the police detective in question was an expert in fingerprint comparison. *Id.* at 1229-30. This Court concluded that the detective's hearsay, in light of the circumstances, had sufficient indicia of reliability to be relied upon by the sentencing court. *Id.* at 1230.

In the current action, Mr. Krause's statements about the effects of the arson on the Buck's employees, residents, and vendors bore no indicia of reliability, unlike the hearsay at issue in *Medley*, *id.* at 1228-30. His remarks on the consequences of the fire for these other people were not supported by anything in the record. Mr. Krause had no direct nor reliable knowledge of the residents', employees', and vendor's circumstances:  he was only repeating what other people told him.

Normally, "a trial court acting as the fact-finder is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." *Commonwealth v. McFadden*, 156 A.3d 299, 309 (Pa. Super. 2017). Accordingly, we are required to vacate the sentence only if we conclude that the trial court relied upon impermissible factors when imposing Appellant's sentence:

> In deciding whether a trial judge considered only permissible factors in sentencing a defendant, an appellate court must, of

- 18 -

necessity, review all of the judge's comments. Moreover, in making this determination it is not necessary that an appellate court be convinced that the trial judge in fact relied upon an erroneous consideration; it is sufficient to render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon such a factor.

*Commonwealth v. Scott*, 860 A.2d 1029, 1030 (Pa. Super. 2004).

In its opinion, the trial court explicitly referred to the hearsay assertions made by Mr. Krause when explaining its reasoning for imposing Appellant's sentence:

> [Appellant] destroyed far more than a building. He caused irreparable harm to the lives of multiple individuals through his actions. . . . [T]enants . . . lost personal possessions like photos, keepsakes and heirlooms that can never be replaced. **Some residents missed work and lost income while others lost their jobs.** In addition to [the] Buck['s] residents, [the] Buck['s] employees lost their jobs, the ability to pay their bills and purchase food for their families. **More than one employee lost their freedom because they could not pay their child support or other debts.** . . . Service providers lost their vending equipment. **One vendor nearly lost his business and could have lost his home due to his equipment being damaged and not being able to recoup all his losses.**

Trial Court Opinion, dated December 3, 2019, at 8-9 (emphasis added).

Accordingly, we conclude that the trial court relied upon impermissible factors in imposing Appellant's sentence. Consequently, we vacate the judgment of sentence and remand for re-sentencing. *Scott*, 860 A.2d at 1030.

Similarly, pursuant our independent review of the record, *Cox*, 2020 PA Super 102, *4, we discovered that the aggregate amount of restitution awarded was also established through the use of hearsay evidence.

"[Q]uestions implicating the trial court's power to impose restitution concern the legality of the sentence." ***Commonwealth v. Hall***, 80 A.3d 1204, 1211 (Pa. 2013); ***see also Commonwealth v. Tanner***, 205 A.3d 388, 398 (Pa. Super. 2019) ("an award of restitution relates to the legality of a sentence"). A "court may entertain a challenge to the legality of the sentence so long as the court has jurisdiction to hear the claim." ***Commonwealth v. Berry***, 877 A.2d 479, 482 (Pa. Super. 2005) (*en banc*); ***see also Commonwealth v. Hoffman***, 198 A.3d 1112, 1123 (Pa. Super. 2018) ("challenge to the legality of sentence is never waived"); ***Commonwealth v. Walker***, 666 A.2d 301, 307 (Pa. Super. 1995) (citing ***Commonwealth v. Balisteri***, 478 A.2d 5 (Pa. Super. 1984)) (legality of sentence of restitution is not a waivable issue).

"When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." ***Lekka***, 210 A.3d at 355 (citation omitted).

> It is the Commonwealth's burden of proving its entitlement to restitution. ***Commonwealth v. Boone***, 862 A.2d 639, 643 (Pa.Super.2004) (stating that the amount of restitution must be supported by the record). When fashioning an order of restitution, the lower court must ensure that the record contains the factual basis for the appropriate amount of restitution. The dollar value of the injury suffered by the victim as a result of the crime assists the court in calculating the appropriate amount of restitution. The amount of the restitution award may not be excessive or speculative. It is well-settled that although it is mandatory under section 1106(c)[8] to award full restitution, it is still necessary that

---

[8] Restitution is authorized under both the Crimes Code and under the Sentencing Code. The Crimes Code, in 18 Pa.C.S. § 1106,

the amount of the "full restitution" be determined under the adversarial system with considerations of due process.

***Commonwealth v. Atanasio***, 997 A.2d 1181, 1183 (Pa. Super. 2010) (internal brackets and quotation marks and some citations omitted); ***see also***

***Lekka***, 210 A.3d at 358 ("Because restitution is a sentence, the amount ordered must be supported by the record, and may not be speculative. In addition, the amount of restitution awarded must be determined under the adversarial system with considerations of due process." (citations and internal quotation marks omitted)).

In the current action, a victim advocate merely completed some forms for the court, maybe with an e-mail or receipt attached, and the trial court just accepted those figures, without allowing Appellant any opportunity for cross-examination. With the exception of Ms. Krause stating that her insurance company "issued a check" for "about $89,607[,]" N.T. Trial at 34, there was no testimony in support of those restitution numbers at trial or sentencing. Moreover, except arguably for Hitz mentioning "a guy named Barry" and "a guy named Eric" – with no surnames -- living at the Buck, there was no evidence admitted at any time establishing that Shaeffer or Gallegos

---

controls restitution as a direct sentence. The Sentencing Code, in 42 Pa.C.S. § 9754, permits a sentence of probation and offers a non-exclusive list of permissible conditions of probation, including restitution.

***Commonwealth v. Deshong***, 850 A.2d 712, 715–16 (Pa. Super. 2004). As the trial court in the current action did not order probation, the restitution award consequently must be pursuant to the Crimes Code under 18 Pa.C.S. § 1106 and, ergo, part of Appellant's direct sentence.

even had a connection to the Buck. *Id.* at 8. No one introduced the applications for restitution or their attachments into evidence; instead, the Commonwealth simply submitted them to the trial court. Thus, all of the information from all of the applications for restitution was hearsay, with no indicia of reliability. *See Medley*, 725 A.2d at 1230. We thereby must vacate the judgment of sentence and remand for re-sentencing for this reason as well. At re-sentencing, the Commonwealth must establish the victims' entitlement to restitution on the record under the adversarial system with considerations of due process and within the bounds of accepted evidentiary proof. *Lekka*, 210 A.3d at 358; *Atanasio*, 997 A.2d at 1183.

For the reasons set forth above, we affirm Appellant's conviction, but, as we perceive non-frivolous issues relating to Appellant's sentencing, we deny counsel's petition to withdraw, vacate Appellant's judgment of sentence, and remand for re-sentencing. *See Cox*, 2020 PA Super 102, *4.

Conviction affirmed. Judgment of sentence vacated. Petition to withdraw denied. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/10/2020

- 22 -