J-S08024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
v.                         :
:
:
ALEJANDRO GONZALES          :
:
Appellant                :     No. 566 EDA 2025

Appeal from the Judgment of Sentence Entered October 16, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008187-2023

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:           **FILED JUNE 23, 2026**

Alejandro Gonzales appeals from the judgment of sentence imposed after the trial court found him guilty of multiple offenses arising out of an attack on his ex-girlfriend.  He challenges the discretionary aspects of sentence.  Upon review, we affirm.

The trial court set forth the facts as follows:

On November 12, 2023, ["Gonzales"] engaged in a violent altercation with [M.S.] ("[c]omplainant") at her residence in Philadelphia.  Complainant testified that [Gonzales] accused her of infidelity and became increasingly aggressive.  When [c]omplainant attempted to use her phone, [Gonzales] forcibly took it from her and began striking her with both closed fists and open hands.  He pulled her hair, punched her multiple times, and threw her to the floor.

[Gonzales'] actions woke [c]omplainant's son, [G.] who was sleeping on the sofa.  When G. attempted to intervene, [Gonzales] cursed at him and ordered him to stay out of the situation.  Complainant testified that [Gonzales] continued to strike her as she pleaded for him to leave.  When she stepped outside onto the front porch, [Gonzales] followed her and resumed hitting her.  The

incident was captured on Ring camera footage, which was later presented as evidence in court.

Complainant stated that she called out to a neighbor for help, but [Gonzales] threatened her and forced her back inside the house. Throughout the altercation, [Gonzales] had a knife clipped to his waist, though he did not produce it. [Gonzales] continued to strike [c]omplainant inside the house, preventing her from calling for help.

Trial Court Opinion, 6/6/25, at 1-2 (citations omitted). Gonzales was arrested and charged with multiple offenses.

On August 5, 2024, the trial court found Gonzales guilty of criminal mischief, possession of an instrument of crime ("PIC"), terroristic threats, simple assault, and recklessly endangering another person ("REAP").[1]

On October 16, 2024, the trial court held Gonzales' sentencing hearing. The Commonwealth offered statements from the complainant and her son. Additionally, the Commonwealth sought to read a letter from the complainant's neighbor. Gonzales objected based on relevancy, but the court allowed it. The letter stated:

To [whom] this may concern: I, [D.W.], reside on the 4600 block of Ditman Street in Philadelphia. On the night in question I witnessed Malti being beaten on her property. She was yelling for help as I came outside. She was bloody on her face and clothing. She asked for help, for someone to call the police.

In the blink of an eye, her son did what he had to do to protect his premature son, siblings, and his mother. I then phoned 911.

_____

[1] 18 Pa.C.S.A. §§ 3302(a)(2), 907(a), 2706(a)(1), 2701(a), and 2705. The court acquitted Gonzales of aggravated assault at the close of the Commonwealth's case.

After that, he proceeded to break car windows as well as vandalize her property.

Before this I had heard and seen the bruised face, arms and legs, as well as the degrading arguments he had put her through. Constantly being—he would always yell and beat them. He is just an upsetting person.

N.T. 10/16/24, 15-16.

At the conclusion of the hearing, the court sentenced Gonzales to an aggregate term of two to four years' incarceration plus two years' probation as follows: 2 to 4 years' incarceration for PIC and terroristic threats, concurrent to each other, followed by 2 years' probation, each, for simple assault and REAP, to run concurrently.[2] The trial court also ordered domestic violence, mental health, drug and alcohol evaluations, and restitution.

Gonzales filed a post-sentence motion, which was denied by operation of law on February 20, 2025. Gonzales filed this timely appeal.

On appeal, Gonzales raises the following two issues:

1. Did the trial court err and abuse its discretion by imposing sentences upon [Gonzales] of 2 to 4 years' incarceration for the crimes of possession of an instrument of crime and terroristic threats, where those sentences were above the aggravated range of the applicable Sentencing Guidelines and the court failed to state on the record its reasons for such above-aggravated-range sentences.

2. The court erred and abused its discretion by permitting, over objection, a letter from a neighbor of the complainant to be read into the record at [Gonzales'] sentencing where that witness had not previously testified at trial and was not present at sentencing,

_____

[2] The court imposed no further penalty for Gonzales' criminal mischief conviction.

and the letter presented no information relevant to sentencing but asserted prior bad acts by [Gonzales].

Gonzales' Brief at 3.

Gonzales challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Instead, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code . . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013)).

Here, Gonzales satisfied the first three requirements under *Colon*. Accordingly, we must determine whether Gonzales raises a substantial question.

In his Rule 2119(f) statement, Gonzales claims that the trial court sentenced him above the aggravated range without stating the reasons for doing so. He also claims that the trial court based his sentence on an impermissible sentencing factor when it considered the neighbor's letter. *See* Gonzales' Brief at 11-12.

- 4 -

We have held that "a claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guidelines presents a 'substantial question' for our review." *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa. Super. 1999). Additionally, an allegation that the trial court imposed the sentence outside the guidelines without providing an adequate explanation on the record raises a substantial question. *See Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa. Super. 2014). A substantial question is also raised when an appellant alleges that his sentence is excessive because the trial court relied on impermissible factors. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa. Super. 2011). Therefore, we will review Gonzales' sentencing claim.

Our standard of review of a sentencing claim is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). Where there is an abuse of discretion, the sentence must be vacated. *See Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007).

In his first issue, Gonzales claims that the trial court abused its discretion when it sentenced him above the aggravated range for his PIC and terroristic threats convictions. Gonzales maintains that the Commonwealth

and the court acknowledged that the standard range was 6 to 16 months' incarceration, plus or minus 3 months; therefore, his minimum sentence of 24 months was beyond the aggravated range by 5 months. He also claims that the court did not state its reasons for this sentence on the record. Therefore, according to Gonzales, we should vacate his sentence and remand the matter for resentencing. Gonzales Brief at 14-15. We disagree.

The Sentencing Code requires that when sentencing a defendant, the trial court must first consider the sentencing guidelines. 42 Pa.C.S.A. § 9721(b). The court also must consider "the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant." *Id.* Finally, before imposing a sentence of total confinement, the court must consider "the nature and circumstances of the crime[,] and the history, character, and condition of the defendant." 42 Pa.C.S.A. § 9725. The appellate court gives great deference to the trial court's sentencing decision. *See Walls*, 926 A.2d at 961.

Notably, when considering the sentencing guidelines, the trial court is permitted to deviate therefrom. "[T]he [s]entencing [g]uidelines are purely advisory in nature." *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007). However, the court must follow certain rules.

> The statute requires a trial judge who intends to sentence a defendant outside of the guidelines to demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court **may deviate from the guidelines, if necessary**, to fashion a sentence which

takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, *so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range*.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation and brackets omitted) (emphasis added).

However, where a sentence outside the guidelines is unreasonable, this Court must vacate it. 42 Pa.C.S.A. § 9781(c)(3). To determine if the sentence is unreasonable, we must consider the following four factors:

**(d) Review of record**.—In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d). "Thus, under the Sentencing Code, an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is 'unreasonable.'" *Walls*, 926 A.2d at 963. "[W]hat makes a sentence 'unreasonable' is not defined in the statute. Generally speaking, 'unreasonable' commonly connotes *a decision that is 'irrational' or 'not guided by sound judgment*.'" *Id*. (emphasis added). Under our standard of review, "rejection of a sentencing court's imposition of sentence on

unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guidelines ranges . . . ." *Id*. at 964.

Initially, our review of the sentencing transcript reveals that, in fashioning Gonzales' sentence, the trial court first considered the sentencing guidelines. Gonzales' prior record score was 5 and the offense gravity score was 3. Thus, as Gonzales correctly noted, the minimum, standard range sentence was 6 to 16 months, plus or minus 3 months.[3] *See* N.T., 10/16/24, at 5, 23.

The trial court then sentenced Gonzales to 2 to 4 years' incarceration for the PIC and terroristic threats convictions based on the Commonwealth's request for a state sentence. This sentence was outside the sentencing guidelines, although, as the Commonwealth observes, Gonzales' exposure was the same, if not greater, if the court had imposed consecutive sentences within the guidelines for the PIC and terroristic threats convictions. In fact, the trial court initially sought to impose consecutive sentences but then did not. Instead, the court indicated it would just impose an aggregate sentence.

Further, contrary to Gonzales' claim, the court explained its reasons for imposing an aggregate 2-to-4-year sentence:

> I have a lot of concerns, obviously. I have a concern that obviously you're on state parole. I do have concerns about what

_____

[3] We observe that there appeared to be some confusion as to what the 6 to 16 months represented. The trial court did not construe it as the limits of the minimum, standard range but rather the minimum to the maximum. Neither the Commonwealth nor defense counsel addressed this. However, for the reasons discussed *infra*, this did not adversely affect Gonzales' sentence.

happened [during the incident]. . . . I saw the video . . . and I saw what happened. I have concerns about . . . possible drug and alcohol use, and I have concerns about possible mental health, and definitely domestic violence.

N.T. 10/16/24, at 22. The court further noted that there were aggravated circumstances in this case. *Id.* at 26.

Although its explanation on the record was brief, it is evident that the severity of the incident, Gonzales' commitment of these offenses while on parole, and his rehabilitative needs were critical factors and weighed heavily in the court's total sentencing scheme. In its opinion, the court elaborated:

Underlying these concerns, as in every sentencing, are the statutorily proscribed concerns for the protection of the public, the gravity of the offense and its impact on the victim and the community, and the rehabilitative needs of the defendant.

With respect to the protection of the public, the PSI reveals that [Gonzales] had a documented history of repeated parole and probation violations, including a 2010 escape conviction, and it further shows that [he] committed the instant offense[s] while still on parole, constituting his eighth violation. This persistent disregard for court-imposed conditions demonstrates that [Gonzales] poses an ongoing threat to society, thereby justifying a custodial sentence over the probation.

In terms of the gravity of the offense and its impact on the victim and the community, the evidence presented at sentencing makes clear that [Gonzales'] conduct was exceptionally severe. Complainant testified that she endured persistent physical, mental, and verbal abuse, including being beaten in front of her children, which created a lasting trauma for her and her family. Her son corroborated that [Gonzales] showed no remorse and that the family remained deeply traumatized. Video evidence further corroborated these accounts by showing that [Gonzales] continued his aggressive behavior even after being shot, refusing to leave the premises despite the clear and present danger to the victim and the community. These factors collectively demonstrate that [Gonzales'] actions had a profoundly adverse impact, warranting a substantial sentence.

Finally, regarding the rehabilitative needs of [Gonzales], the record clearly indicates that [his] repeated failures to comply with supervision, including prior firearm possession offenses as noted in the PSI, underscore the likelihood that probation would be ineffective as a rehabilitative measure. Additionally, this [c]ourt noted at the sentencing hearing that concerns over possible drug and alcohol use, as well as elements of domestic violence inherent in [Gonzales'] conduct, further necessitated a period of incarceration to allow for proper intervention and evaluation.

Trial Court Opinion, 6/6/25, at 3-4 (citations omitted). The court's rationale indicates that it was necessary to deviate from the guidelines to account for the protection of the public, the rehabilitative needs of Gonzales, and the gravity of his offenses as it relates to the impact on the victim and community.

Nonetheless, because the trial court sentenced Gonzales outside the guidelines, even as an aggregate sentence, we must reverse his sentence if we find that the sentence was unreasonable. Here, we do not.

The sentencing court had the benefit of a pre-sentence investigation report ("PSI"). It is well settled that where a sentencing court is informed by a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citing *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988)). Notably, as the Commonwealth emphasized at the hearing, the PSI indicated: "Based on the defendant's criminal and violation history, the defendant has not shown a commitment to address his substance abuse problems, change his – behavior, or comply with the rules and regulations imposed by the court." N.T., 10/16/24, at 16.

- 10 -

Additionally, the trial court adhered to the requirements for deviating from the sentencing guidelines.  The court considered the guidelines and set forth its rationale for Gonzales' sentence.  The court found that the circumstances of this incident (captured on video), Gonzales' history and inability to comply with the court's rules and regulations, and his rehabilitative needs warranted a sentence outside the guidelines.  The court exercised rational judgment in deviating from the sentencing guidelines as set forth above.  Thus, because the trial court's sentence was not unreasonable and Gonzales' first issue merits no relief.

In his second issue, Gonzales claims that the trial court erred in relying on impermissible sentencing factors.  Specifically, he argues that the court improperly considered a letter from the complainant's neighbor who observed his behavior during the incident and on other occasions.  According to Gonzales, this evidence did not fall within the ambit of "community impact" evidence but instead only served to darken his character.  Gonzales' Brief at 17-18.  We disagree.

It is well settled that "a proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials." ***Commonwealth v. Medley***, 725 A.2d 1225, 1229 (Pa. Super. 1999); ***see Commonwealth v. Orsino***, 178 A.2d 843, 846 (Pa. Super. 1962) (sentencing court has wide latitude in considering facts, regardless of whether such facts are produced by witnesses who the court sees and hears).  Rather, the court may receive any relevant information for

purposes of determining the proper penalty. *See Commonwealth v. King*, 182 A.3d 449, 454 (Pa. Super. 2018); *Commonwealth v. Maroney*, 193 A.2d 640, 642 (Pa. Super. 1963). This includes victim and community impact evidence. *See Commonwealth v. Ali*, 149 A.3d 29 (Pa. 2016).

Here, the trial court admitted the neighbor's letter over Gonzales' objection based on relevancy. This was not improper.

First, as noted above, a court has more latitude regarding the rules of evidence at a sentencing hearing than at trial. The letter was relevant in that it showed Gonzales' behavior the night of the incident and on other occasions personally affected the neighbor. She too was exposed to his conduct and endured it to some extent. She had to call 911 the night of the incident. All this clearly upset her. Therefore, the evidence was appropriately considered as victim and/or community impact evidence.

Notwithstanding this, and significantly, the trial court acknowledged Gonzales' concern about the letter and indicated it would weigh it accordingly. In its opinion, the court noted its measured consideration of the letter and that it relied on other ample evidence to fashion Gonzales' sentence. It explained:

> The letter was permitted to ascertain the impact of [Gonzales']
> actions on the community, with the [c]ourt explicitly noting on the
> record that the letter would receive the "appropriate weight."
> However, to the extent that the letter contained unsupported
> allegations against [Gonzales], it was disregarded, and the record
> does not reflect any reliance on its unverified assertions in crafting
> [his] sentence. Accordingly, while this [c]ourt permitted the
> Commonwealth to introduce the neighbor's letter, it did not
> improperly influence the sentencing determination. Rather, the

sentence was imposed on the facts which justified his conviction, with which [Gonzales] does not argue, and . . . factors set forth in the record . . . .

Trial Court Opinion, 6/6/25, at 6 (citation omitted).

Therefore, we conclude that the trial court did not err in considering the neighbor's letter at the sentencing. Gonzales' second issue likewise merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/23/2026